ANDREW JACKSON, Petitioner, v. PAUL E. KAISER, Warden.—No. 39352. —185 S. W. (2d) 784.

Court en Banc, February 9, 1945.

*Ivan H. Light* for petitioner.

*J. E. Taylor,* Attorney General, and *B. Richards Creech,* Assistant Attorney General, for respondent.

TIPTON, J.—Habeas Corpus: On September 6, 1939, a complaint was filed in the St. Louis Court of Criminal Correction against petitioner, charging him with the crime of robbery. In January, 1941, the petitioner was taken into custody in New York by the United States under a Federal charge of having fled from Missouri to avoid prosecution for this same robbery. A Federal indictment charging a violation of Title 18, U. S. Code, Section 408E (Fugitive Felon Act) was later filed in the United States District Court for the Eastern District of Missouri. An information, charging the petitioner with robbery in the first degree, was filed in the Circuit Court of the City of St. Louis on June 19, 1941. From the time of the petitioner's arrest, he was in the custody of the United States Marshal for the Eastern District of Missouri, who lodged petitioner in the City Jail at St. Louis.

On November 12, 1941, a petition for a writ of habeas corpus ad prosequendum was filed in the Circuit Court of the City of St. Louis, and the writ of habeas corpus ad prosequendum was issued commanding William B. Fahy, United States Marshal of the Eastern District of Missouri, to bring the body of the petitioner on November 13, 1941, at 10:00 A. M., and from day to day, before Division 10 of the Circuit Court of the City of St. Louis, so that the petitioner could answer to the charge of robbery in the first degree. William B. Fahy made no return to the writ of habeas corpus ad prosequendum, but did, by a Deputy United States Marshal, produce the body of petitioner in Division 10 of the Circuit Court of St. Louis on November 13, 1941, as directed by the writ of habeas corpus ad prosequendum, and from day to day until the trial was completed on November 14, 1941. On December 5, 1941, the petitioner was brought before the Circuit Court, and, thereupon, the petitioner was sentenced to imprisonment in the State penitentiary for a period of five years.

On the next day, the petitioner was brought into the District Court of the United States by the United States Marshal, and petitioner pleaded guilty to the indictment pending against him in that court. He was sentenced to three years' imprisonment and was imprisoned in the Federal prison at Leavenworth, Kansas, to serve that sentence which expired in February, 1944. On February 16, 1944, the Sheriff of St. Louis delivered the body of the petitioner to the keeper of the Missouri penitentiary to serve the sentence imposed on petitioner by the Circuit Court of St. Louis.

Respondent's return to our writ states that he is holding petitioner under a commitment issued pursuant to the judgment and sentence of December 5, 1941, of the Circuit Court of St. Louis, and that he received petitioner on February 16, 1944. Other pertinent facts will be stated in the course of the opinion.

 The petitioner contends that "When the United States Marshal chose to honor the Missouri Circuit Court's writ of habeas corpus ad prosequendum, the State Court acquired full and exclusive jurisdiction, custody and control of petitioner." He bases this contention upon the fact that the United States Court had prior claim and waived this claim when the United States Marshal produced him in the Circuit Court without making any return to the writ of habeas corpus ad prosequendum. He admits that the United States Marshal could make a return to the writ reserving the prior claim of the United States to hold him for trial in the District Court.

"The chief rule which preserves our two systems of courts from the actual conflict of jurisdiction is that the court which first takes the subject-matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose." Ponzi v. Fessenden, 258 U. S. 254, 1. c. 260. See Cato v. Smith, 104 F. 2d 885; Zerbst v. McPike, 97 F. 2d 253.

"As an easy and flexible means of administering justice and of affording each sovereignty the right and opportunity to exhaust its remedy for wrongs committed against it, there has evolved the now well established rule of comity which is reciprocal, whereby one sovereignty having exclusive jurisdiction of a person may temporarily waive its right to the exclusive jurisdiction of such person for purposes of trial in the courts of another sovereignty. Thus the offender is accorded a speedy trial and the administration of justice is expedited by the availability of evidence, which might through lapse of time be lost, but such a waiver is a matter addressed solely to the discretion of the sovereignty, or its representatives having power to grant it. Ponzi v. Fessenden, supra, and Ex parte Aubert, D. C., 51 F. 2d 136. The privileges granted by this flexible rule of comity should and must be respected by the sovereignty to which it is made available, and this respectful duty is reciprocal, whether federal or

state, because neither sovereignty has the power to override it. Under the free exercise of this rule, no right or immunity granted by the constitution, laws, or treaties of the United States, is invaded or impaired." Lunsford v. Hudspeth, 126 F. 2d 653, l. c. 655.

But under the facts as disclosed by this record, the Circuit Court did not "acquire full and exclusive jurisdiction, custody and control of the petitioner." The Federal Government could "lend" the prisoner to the State in order to afford him a speedy trial and to convenience the witnesses who might be necessary to be assembled for or against him. This can be done without a complete surrender of the prior jurisdiction over him which the Federal Government in this case has acquired. Zerbst v. McPike, supra.

Petitioner admits this could have been done by a proper return made by the United States Marshal to the writ of habeas corpus ad prosequendum, but he does contend that since there was no return made, the Marshal did make a complete surrender of the Federal Government's claim to his custody.

We think that under the terms of the writ of habeas corpus ad prosequendum, no return was necessary when the Marshal saw fit to honor the writ. The writ reads: "We command you, That you do, on Thursday, November 13, 1941, at 10:00 A. M. and from day to day as wanted without excuse or delay, bring, or cause to be brought, before the honorable Circuit Court of the City of St. Louis, Division No. 10 the body of Andrew Jackson by whatever name or addition he is known or called, who is in your custody, to answer a charge of Robbery in the First Degree, a felony, then and there to perform and abide such order and direction our said Court shall make in that behalf, and have with you this writ, with your return indorsed thereon; and herein fail not at your peril."

The United States Marshal obeyed that writ as shown by petitioner's brief, wherein he says: "William B. Fahy, said United States Marshal, made no written return to said writ of habeas corpus, though ordered by it to do so, but did, by a Deputy United States Marshal, produce the body of petitioner in Division 10 of said Circuit Court on November 13, 1941, as directed by said writ, and from day to day thereafter, as wanted, until the trial was completed on November 14, 1941, and sentence passed on December 5, 1941.

"When petitioner's presence was not required in the court room before said Circuit Court during his trial and the passing of sentence, he was allowed by the said Circuit Court to remain in the personal custody of said United States Marshal, who produced the petitioner in court from day to day as required by the Circuit Court, and strictly observed the orders of said Circuit Court with reference to bringing the petitioner into the court room, taking him out during recesses and over night, and returning him when desired by the Circuit Court."

Since the Marshal obeyed the terms of the writ, it was not necessary for him to make a return. The writ did not direct him to surrender the prisoner to an officer of the Circuit Court, but it did command the Marshal to bring the body of this petitioner into the Circuit Court on November 13, 1941, and from day to day so that the prisoner could answer to a charge of robbery in the first degree. This the Marshal did. The Marshal had control of the petitioner all during the trial in the Circuit Court. By the writ of habeas corpus ad prosequendum, the Circuit Court's custody of the petitioner was placed in the Marshal. In re Grant, 67 Pac. (Wash.), 73.

We hold that the Circuit Court never did obtain full and exclusive custody of the petitioner during his trial for robbery, but its custody of the petitioner during this trial was subject to the prior custody of the District Court which already had custody of him. As said in the Zerbst case, supra, the Federal Government "lent" the petitioner to the State for the limited purpose of trial in that court. It follows that since the Circuit Court did not have full and exclusive custody of the petitioner, it did not waive its right to have its judgment and sentence executed by returning him to the United States Marshal at the conclusion of the trial in that court.

The next point raised by petitioner is stated in his brief as follows: "Petitioner's Missouri sentence began to run on the day of sentence. It was interrupted and waived when the State authorities surrendered him to the United States Marshal. The State waived its claim and petitioner cannot be compelled to serve his sentence in installments."

The petitioner contends that by virtue of Section 4106, which provides that when a person is convicted the sheriff shall "without delay" deliver the convict to the keeper of the penitentiary, his State sentence started on December 5, 1941, and that he is entitled to credit on his State sentence for the time he served in the Federal penitentiary. Or, to state his contention in another way, his State sentence started on the day he was sentenced, and the State waived its right to start his State sentence after the expiration of his Federal sentence, this for the reason that he cannot be compelled to serve his sentence in installments.

We agree with the petitioner that he cannot be compelled to serve his sentence in installments. "A prisoner has some rights. A sentence of five years means a continuous sentence, unless interrupted by escape, violation of parole, or some fault of the prisoner, and he cannot be required to serve it in installments." White, Warden, v. Pearlman, 42 F. 2d 788, l. c. 789.

There might be some merit in petitioner's contention if the State court had exclusive custody of the petitioner on the date he was sentenced by the State court. But in this case, the Circuit Court did

not have exclusive custody of the petitioner on the date he was sentenced in that court.

His contention was answered in the case of Lunsford v. Hudspeth, 126 F. 2d 653, l. c. 656. In that case, the petitioner was under a State sentence in the Oklahoma penitentiary and was brought before the United States District Court for trial under a writ of habeas corpus ad prosequendum. "The question presented for decision is whether the petitioner commenced the service of the sentence on February 9, 1939, the date on which it was imposed by the Federal Court, as he contends, or whether the service of the sentence commenced on Novmber 2, 1940, the date on which he was surrendered by the state authorities to the United States Marshal and delivered to the custody of the Warden of the United States Penitentiary, . . . " That court held that the Federal sentence did not begin to run until after the expiration of the State sentence. In distinguishing that case from the case of Smith v. Swope, 91 F. 2d·260, the court said: "The valid distinction lies in the fact that here the Marshal of the Northern District of Oklahoma did not have exclusive jurisdiction of the petitioner, neither did he have the power in his own right, or acting in obedience to the writ of habeas corpus ad prosequendum to acquire exclusive jurisdiction and control of the petitioner."

The law and not the judgment fixes the date on which a term of imprisonment shall commence. Higlin v. Kaiser, 352 Mo. 796, 179 S. W. (2d) 471. We, therefore, hold that the petitioner's State sentence did not commence to run until after the expiration of his Federal sentence.

For the reasons assigned, the petitioner is remanded to the custody of respondent. All concur.