STATE of Missouri, Respondent,

v.

Robert ROBINSON, Appellant.

No. 47109.

Supreme Court of Missouri,

Division No. 1.

June 8, 1959.

Motion for Rehearing or for Transfer to
Court en Banc Denied July 13, 1959.

Joseph Langworthy, Pacific, for appellant.

John M. Dalton, Atty. Gen., John C. Baumann, Asst. Atty. Gen., for respondent.

HOLLINGSWORTH, Judge.

Defendant has appealed from a sentence of imprisonment in the State Penitentiary for a term of two years for the crime of burglary in the second degree and a term of two years for the crime of larceny in

connection with said burglary. Section 560.110 RSMo 1949, V.A.M.S. (to which revision all statutory references herein are made unless otherwise indicated).

Errors assigned are: (1) that no submissible case was made for reasons that (a) the crime of larceny was not defined by any statute in force at the time of the alleged commission of the alleged burglary and theft, (b) the court had no jurisdiction of the person of defendant, (c) the evidence was insufficient to show any breaking or entering into the alleged burglarized premises or the theft of any of the property allegedly stolen from the premises by defendant; (2) the admission and exclusion of certain evidence; (3) the giving and refusal of certain instructions; and (4) denial by the court of sufficient time for argument as requested by counsel for defendant.

The information was filed on July 17, 1956. Thereafter, following numerous continuances, the cause was set for trial in the Circuit Court of the County of St. Louis on May 20, 1958. Prior to said date, however, defendant was convicted in the Court of Criminal Corrections of the City of St. Louis of the crime of malicious destruction of property, for which he was sentenced to and confined in the jail of the City of St. Louis. On May 19, 1958, the Prosecuting Attorney of St. Louis County filed in said county a petition for writ of habeas corpus ad prosequendum seeking the production of defendant for trial in the Circuit Court of St. Louis County on May 20, 1958, which petition was sustained. Pursuant to writ of habeas corpus ad prosequendum so issued, defendant was ordered produced to the Circuit Court of St. Louis County for trial in the instant case. Thereafter, on May 20, 1958, the warden of said city workhouse did so produce defendant in the Circuit Court of St. Louis County. Defendant, over objection of his counsel, was then and there placed upon trial, during the progress of which trial he was in the custody of the Sheriff of St. Louis County.

The only evidence in the case was that adduced in behalf of the State. It warrants a finding of the following facts:

Merle-Jung, Incorporated, a corporation engaged in the general contracting business, maintained during the month of June, 1956, an office in a shed at 8900 Page Avenue, in St. Louis County, Missouri, in the performance of work it was doing for the Goodyear Tire Company. The shed was about 12 feet wide and 20 feet long. The openings therein were four windows and an entrance door, in which door there were six panes of glass. Said shed was also used for the storage of numerous hand tools used on the job. Harold Flack was in charge of the work and the defendant was employed there as a laborer. On the afternoon of Friday, June 8, 1956, at about 4:00 p. m., defendant was laid off from his work and given a check in payment of his wages, whereupon he left the premises in a 1948 or 1950 black Plymouth sedan. At 5:30 p. m., Flack, the last man to leave the premises that day, checked the tools in the shed, which, among other tools, included a Thor electric hammer of the value of $200, and closed and locked the door and all windows. Upon arrival at the shed on Monday morning, June 11, 1956, Flack discovered that the glass had been broken from the door and the interior of the premises was disarranged. The Thor electric hammer, which he had left in the shed when he closed and locked the door, and an electric grinder, a "coke" machine, a half case of Pepsi-Cola, and 60 pennies had been taken from the shed. Flack next saw the hammer, identified by him at the trial as State's Exhibit "A", at the University City Police Station when it was shown to him by a police officer at about 2:30 p. m. on June 11, 1956, at which time and place he also saw and identified the defendant. The hammer was delivered to Flack at that time.

At about 3:20 a. m., on Saturday morning, June 9, Police Officers Stokes and Kayser of the University City Police Department, while riding in a police car on

patrol duty, saw defendant driving east in a black 1950 Plymouth sedan. His conduct was such that they tried to stop him, but he increased his speed. They pursued him, sounding their siren and turning on a red light. Defendant turned northward, thence west, where his car struck a tree and skidded to a stop in a yard. Defendant fled from the car. Shortly thereafter, he was apprehended hiding under a school bus. He was advised that he was under arrest. He came out from under the bus and again fled and was finally captured as he hid in a tool shed. Defendant was taken to the police station and an examination of the abandoned Plymouth was made. Found therein was a Thor electric hammer. Defendant said it belonged to him. State's Exhibit "A", shown to Officer Stokes at the trial, was identified by him as the hammer found in the Plymouth car. Police Officer Gorman interrogated defendant at the police station and defendant stated that he had stolen a Thor air-hammer on June 8, 1956, from in front of a tool shed of Merle-Jung, where he had been employed.

Following the close of the evidence in behalf of the State, defendant asked the court to instruct the jury to disregard all inferences that could be drawn from any reference to State's Exhibit "A" because it was never introduced into evidence by the State. The court, over objection of defendant, permitted the State to reopen its case in chief and to formally place said exhibit in evidence. Defendant again objected upon the ground that: " * * * there was no chain of possession shown that this is the same Exhibit A that was in this courtroom yesterday. And I would like to offer evidence to show whatever was in the courtroom yesterday was abandoned in the courtroom with nobody here last night." The court denied the offer of proof.

Defendant first contends that "since the crime of larceny was not defined by any statute in force at the time of alleged commission of the crime charged, the information is defective" and that the submission of that issue under Instruction 2 was error.

His argument runs: In the enactment of new § 560.156 in 1955, wherein the General Assembly (Laws 1955, p. 507) defined the crime of "stealing", it failed to modify § 560.110 in force at the time of the alleged commission of the burglary and *larceny* charged in the information, by substitution of the crime of "stealing", as defined in § 560.156, in lieu of the crime of *larceny*, as set forth in § 560.110; and that, therefore, there was no statute defining the crime of *larceny*, in force in Missouri; and that the larceny charged in the information fails to allege that the property was taken without the consent of the owner.

■ The information charged (1) burglary in the second degree and (2) that the defendant "feloniously and burglariously did steal, take and carry away, with the felonious intent then and there to permanently deprive the owner of the use thereof and to convert the same to his own use" the property priorly described herein. Both of the contentions have been decided adversely to defendant by our recent cases of State v. Zammar, Mo., 305 S.W.2d 441, 445, and State v. Woolsey, Mo., 324 S.W.2d 753, in which we held that *larceny* was included within the crime of *stealing*, as the latter term was defined in § 560.156, and that an information charging burglary and larceny in connection with such burglary, as authorized by § 560.110, was valid. Instruction 2 submitted the issue of larceny of the Thor hammer in substantially the same wording as that employed in the information. Section 560.110, in effect at the time of the alleged commission of the burglary and larceny with which defendant was charged (and after its amendment in 1957 by substitution of the word "stealing" for the word "larceny"), fixed the punishment for larceny (which comes within the definition of stealing as set forth in § 560.-156) when committed in connection with burglary at imprisonment in the penitentiary for not less than two nor exceeding five years. Consequently, § 560.110 not only authorized the trial of defendant for the crime of burglary and larceny but it also

governed the punishment to be assessed by the jury if it found him guilty of both burglary and larceny.

Defendant next contends that the court lacked jurisdiction of the person of defendant and that it was error and in violation of the due process clause, Article I, § 10, of the Constitution of Missouri, V.A.M.S., for the court to proceed with his trial after he had been brought into court under a writ of habeas corpus ad prosequendum, because said "writ was issued in the wrong county in violation of § 532.030", without notice and without hearing. Section 532.030, however, relates to the issuance of a writ of habeas corpus sought by a person seeking release from custody on grounds that *he is unlawfully restrained of his liberty*, and which provides that the application shall, in the first instance, be made to the circuit judge of the county in which he allegedly is wrongfully held in custody. Obviously, that section is not applicable in the instant case. Defendant also cites § 541.140, which states that a defendant in actual confinement "shall be removed to the jail of the proper county, in like manner and with like effect, in all· respects, as in cases of change of venue." But, by reference to a preceding section, 541.120, it is readily apparent that the procedure provided in § 541.140 is intended to apply only in those cases where it develops before verdict or judgment that a defendant is being prosecuted in a county not having jurisdiction of the offense, in which event § 541.120 directs that the court transfer the cause to the court of the proper county, etc. That is not this case. Here the defendant was charged in the proper county but he was in custody in the City of St. Louis pursuant to sentence of conviction for a crime committed in said city. Hence, in order to bring him before the proper court for trial on the instant charge he was ordered transferred to St. Louis County.

Section 476.070 provides: "All courts shall have power to issue all writs which may be necessary in the exercise of their respective jurisdictions, according to the principles and usages of law." Speaking of the function of the writ of habeas corpus ad prosequendum, when issued under the provisions of § 476.070, this court, in State ex rel. Billings v. Rudolph, 322 Mo. 1163, 17 S.W.2d 932, 933, quoted with approval from a Pennsylvania case as follows:

"'On the prisoner's other contention not much ought to be said, for nothing can be said in support of it. At all times he was within the commonwealth. By its process he had been committed to one of its penal institutions for a violation of one of its laws. It not only did not object to his being brought into the jurisdiction of one of its courts to answer a more serious charge than the one upon which he had been committed, but asked, at the instance of a district attorney representing it in his district, that his body should be produced, to be subjected to punishment upon a charge which he was called to answer, different and distinct from that for which he had formerly been convicted. The warden of the penitentiary having him in custody made no question as to the commonwealth's right to take him away; and, under the circumstances, when he reached the jurisdiction in which he was to be tried for the most serious. offense known to the law, it was none of his concern how he got there. A prison is not a place of refuge for a criminal. It is for his punishment, to which he is involuntarily committed, and the same power that commits him can take him from it when in the interest of justice he should be transferred elsewhere to answer for his misdeeds.'"

At trial time of the instant case defendant was in lawful custody of the State and no constitutional (or statutory) right was violated in changing his custody from the City of St. Louis to the County of St. Louis for trial without notice or hearing. Jack-·

son v. Kaiser, 353 Mo. 919, 185 S.W.2d 784. The contentions above made are overruled.

■ As to the contention that the evidence does not warrant a finding of breaking and entering on the part of defendant: The evidence showed that the glass panelling had been broken from the door of the shed, that the interior was in disarray and that the Thor hammer introduced in evidence and other items had been taken from it after it was closed and locked on the afternoon of June 8. Such evidence clearly warranted a finding that there had been a forcible breaking and entry into it. As to the sufficiency of the evidence to show that defendant was the perpetrator of the burglary and the theft of the electric hammer: About 3:20 a. m. the following morning, defendant was discovered in the exclusive possession of and driving a black Plymouth car. He fled when the officers sought to arrest him. When finally apprehended he said at first that the Thor hammer found in the Plymouth car belonged to him. In a later statement he stated he had stolen it from in front of the shed on the afternoon of June 8. His possession of the hammer was otherwise unexplained. Defendant, however, further contends that the State is bound by his declaration that he stole the hammer from in front of the shed. Other evidence introduced in behalf of the State tended to show that it was stolen from inside the shed. Defendant's statement was introduced as an admission that he had stolen the hammer and the jury was warranted in accepting or rejecting his statement that he took it from in front of the shed, as it should find the fact to be. State v. Jones, 363 Mo. 998, 255 S.W.2d 801, 804; State v. Turner, Mo., 272 S.W.2d 266, 270, 48 A.L.R.2d 1008. The evidence above narrated warranted submission of both the burglary and larceny charged in the information. State v. Énochs, Mo., 98 S.W.2d 689; State v. Oliver, 355 Mo. 173, 195 S.W.2d 484, 485; State v. Denison, 352 Mo. 572, 178 S.W.2d

449, 455; State v. Russell, Mo., 324 S.W. 2d 727.

■■ Defendant further contends that the court erred in refusing to instruct the jury to disregard the evidence "concerning the air hammer, in view of the fact that [it] was not introduced into evidence by the State, and abused its discretion * * * in * * * allowing the State to reopen its case to offer it in evidence." It is well settled that the trial court has a broad discretion as to the order of proof and the reopening of a case. The hammer had in fact been exhibited to the jury and witnesses were examined and cross-examined concerning it. It was, therefore, actually in evidence, though not formally introduced prior to the close of the State's case. State v. Wilson, Mo., 248 S.W.2d 857, 859. There is nothing in the record showing any abuse of the discretion vested in the trial court in permitting the reopening of the case and formal admission of the hammer into evidence. State v. Dobbins, 351 Mo. 796, 174 S.W.2d 171, 172. The contention is overruled.

■ But, in the same connection, defendant further insists that the hammer (State's Exhibit "A") was not sufficiently identified and that the court erred in "refusing to hear defendant's evidence that [it] was not necessarily the same [hammer] identified in court on the previous day and that there was a gap in the chain of possession at the time of trial." On the first day of the trial, a Thor electric hammer, marked by the reporter as State's Exhibit "A" and so identified by witness Flack as the hammer stolen from the shed, was shown to the jury. On the second day, State's Exhibit "A"—there was only one Exhibit "A" in the case—was shown to a police officer testifying in behalf of the State and by him identified as the hammer having been found by him in defendant's car. In this state of the record, it was completely immaterial where it had been or in whose custody it was during the in-

·terim. The court did not err in denying the offer of proof made by defendant.

■ Defendant also contends that the court erred "in giving Instruction No. 7, and in refusing to give defendant's Instruction A as proffered, in that the instructions as given by the court allowed the jury to find the defendant guilty on a belief that on the whole he was guilty as charged, even though they might in fact have believed that one or more material and necessary elements of the offense had not been proved to have been committed by the defendant beyond a reasonable doubt." Instruction No. 7 merely advised the jury, in substance, that (1) the information was only a formal charge and was not to be taken as evidence of defendant's guilt; (2) the defendant was presumed to be innocent; (3) the burden was upon the State to prove his guilt beyond a reasonable doubt; (4) the duty of the jury was to convict if guilt was found beyond a reasonable doubt; and (5) the duty of the jury was to acquit if it had a reasonable doubt of guilt. Defendant does not point to any error (and we find none) in the instruction. His real contention seems to be the refusal of his proffered Instruction A, which would have directed the jury that if it "entertain[ed] a reasonable doubt upon any material fact constituting the offense charged in the information * * * it will be your duty to find defendant not guilty as to such offense." The instructions given by the court in submitting the issues of defendant's guilt of both the burglary and larceny hypothesized every material element of each of the crimes with which defendant was charged. Instruction A would have left to the jury determination of whatever fact or circumstance it might conceive to be a material element of either of said offenses, irrespective of whether such fact or circumstance was or was not in law a material element of such offense. The court did not err in refusing it.

■ Defendant next contends that the court erred in giving Instruction 5, relating to circumstantial evidence, in that it "erroneously classified evidence omitting immediate or direct real evidence (referred to by defendant as "autoptic" evidence) and in effect instructed the jury to disregard such evidence by such omission." Said instruction advised the jury that: "Evidence is of two kinds, direct and circumstantial. Direct evidence is where a witness testified directly of his own knowledge of the main fact or facts to be proven. Circumstantial evidence is the proof of facts and circumstances in a given case from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind." The only evidence claimed by defendant to be "autoptic" is the hammer, and he fails to point out in what manner the alleged exclusion of the hammer from consideration by the jury was prejudicial to him. Apparently, he overlooks the fact that he has strenuously insisted that the hammer should not have been introduced into evidence. So, even if the instruction excluded it from consideration, which it did not, the error, if any, would have been in his favor. The contention is overruled.

■ Defendant's final contention is that the court erred in refusing him sufficient time for argument. He requested 45 minutes; the court allowed him 30 minutes. He made no objection to the ruling and now makes no showing of prejudice by reason of the refusal to allot him the time requested. No abuse of the broad discretion vested in the trial court in a matter of this nature is shown. The contention is overruled.

The judgment is affirmed.

All concur.