**STATE of Missouri, Respondent,**

v.

**Gerald Gene HOUSTON, Appellant.**

**No. 54771.**

Supreme Court of Missouri,
Division No. 2.

March 9, 1970.

John C. Danforth, Atty. Gen., Thomas L. Patten, Asst. Atty. Gen., Jefferson City, for respondent.

Samuel T. Vandover, Clayton, for appellant.

PRITCHARD, Commissioner.

By the verdict of a jury appellant was found guilty of robbery in the first degree by force and violence. A previous felony conviction having been alleged and found, appellant as a second offender was sentenced to ten years imprisonment in the Department of Corrections.

The first issue presented is whether appellant was entitled, under the evidence, to have the jury instructed upon the lesser offense of stealing from a person.

On the night of April 26, 1968, around nine o'clock, Nellie Hampton was on her way to her home from the City Hall of Kinloch, Missouri. She had her purse with her. On Carson Road there were two boys behind her, "and as I turned off Carson Road they grabbed me and taken my purse." Before Nellie got across Lurch Street she noticed someone was behind her talking. "Q. You say—what did these two boys do? A. When I got off of Carson Road to go by the Masonic Hall there they came up behind me and grabbed me. Q. Then what happened? A. He taken my purse. Q. At this time were you able to determine what either of these two or both looked like? A. Well, the one that snatched my purse had on a loud jacket or sweater." The other person had on a dark coat, and was shorter than the person who had on the loud jacket. The two went back to Scudder and when Nellie got back there she met Eddie Lang and told him the two boys bothered her and had her purse. Lang looked for them on Winton but did not see them. Nellie went down to the police station later that night and there saw appellant wearing a same or similar loud shirt and a blue jacket as she had seen on the person who took her purse. The purse was recovered by Nellie through Lang the following Saturday. The straps on the purse had not been broken at the time it was snatched, but were broken when she recovered it.

Eddie Lang was also headed to his home from his business on the night of April 26. On the way he "saw this lady running behind these two fellows and she was hollering and I stopped my car and asked her if someone done something to her, she said, 'Yes, somebody just knocked me down and took my pocketbook.'" Lang could not describe the two by their faces, but described their clothing: "One had on a brown coat and the other had on a blue coat." One was taller than the other; one was short. Lang turned his car around, drove around in the area, and finally onto Granberry where he saw the two fellows. "When I say them they was standing on the side of the street. They had this pocketbook and was pulling things out of the pocketbook." He recognized the two and told them he saw them take the lady's purse. "I told them to give it back, then I grabbed the pocketbook." He pointed out appellant in court as being one of the individuals he saw going through the pocketbook. Lang got out of his car and began to talk to the two, and then walked back and picked up the papers which were thrown on the same side of the street the two men were on. Lang had known appellant and his companion (Lee) since they were small, somewhere since they were seven or eight years old. He knew their families, and was on good, friendly terms with them. He had known appellant longer than Lee, who went by his last name.

In testifying in his own behalf appellant denied that he was involved in the "purse snatching" incident with Nellie Hampton, and testified further that he was at another

place gambling with friends at the time the alleged robbery took place. An alibi instruction was given by the court. Appellant argues that the evidence adduced by the state required the court to give an instruction (stealing from the person) as a part of the law of the case as would be true under his cited case, State v. Herron, Mo., 349 S.W.2d 936.

In 77 C.J.S. Robbery § 17, p. 460, it is said, "There is a conflict in the cases decided under the common law, and statutes substantially similar with respect to the element of force or intimidation, as to whether mere snatching of property constitutes robbery. According to one view such snatching, without further indication of violence, is robbery. Other authority, however, holds that mere snatching is not robbery, as where the property is snatched so quickly as to allow no time for resistance. Irrespective of these conflicting views, the authorities unite in condemning snatching as robbery where there is concurrent intimidation, or actual violence in excess of mere snatching, as where the force used in snatching is so great as to knock the victim down, or where a physical struggle or blow accompanies the snatching, or where the property is so attached to the person or apparel of the victim as to afford resistance * * *." See also 46 Am.Jur. Robbery, § 21, p. 149; and annotations on the distinctions between robbery accomplished by force or violence and mere stealing as by purse snatching: 57 L.R.A. 437; 46 L.R.A., N.S., 1149; and L.R.A.1918E, 938.

The precise contention appellant makes was considered in State v. Adams, Mo., 406 S.W.2d 608, but on its facts that case is distinguishable. There the facts which would have supported a submission of stealing (held to require an instruction on that lesser offense for which the case was reversed and remanded for new trial) came into the trial in the state's case. A police detective testified as to what the defendant had told him as to the incident, that he had merely grabbed the billfold away from the victim, Mr. Wilks.

■ Although Nellie Hampton testified that the two boys *grabbed* her and took her purse, and Lang testified that she told him somebody *knocked her down* and took her purse, appellant would have the evidence of mere stealing from the person come from the fact that Nellie did not mention to the police that she was grabbed or knocked down, but merely told them her purse was snatched. He says also that the fact that Nellie was running behind the boys when Lang arrived at the scene "indicates that she was not knocked to the ground nor grabbed in such a manner as to render her incapable of running behind two young boys for some distance. This evidence is sufficient to cause reasonable men to believe that Mrs. Hampton's purse, though stolen, was not taken by force or violence." These stated contentions would support an argument as to the credibility of the testimony of Nellie and Lang. They do not amount to positive evidence of stealing from the person as would require an instruction to be given on that lesser offense. The only evidence in the case as to the actual taking of Nellie's purse was that it was done accompanied by force and violence: The assailants grabbed Nellie, knocked her down, and snatched her purse with sufficient force to tear the straps thereof (as may be inferred from her testimony that the purse straps were not in the broken condition at the time it was snatched, but were when she recovered it). There was no error in failing to give an instruction to the jury on the subject of stealing from a person. The only competent evidence is that there was actual violence in excess of mere snatching.

■ Theodore Lee was a companion of appellant at the time of the robbery incident, and was seen with him by Lang going through the purse. By appellant's second point he urges error in the court's allowing the state to comment upon appellant's failure to produce Lee as a witness in his behalf. Nothing was presented in the motion for new trial as to this point and ordinarily it would not be considered (see State v. Thompson, Mo., 425 S.W.2d 80, 85 [11]

and cases cited). However, appellant asserts the matter as plain error under Supreme Court Rule 27.20(c), V.A.M.R. Appellant's counsel argued as to the whereabouts of Lee, and stated, "He is still in Kinloch." An objection was made by the state, sustained, and the jury was instructed to disregard defense counsel's statement that Lee was in Kinloch. Appellant's counsel then stated to the jury that Officer West had seen Theodore Lee since this time. In the state's closing argument counsel stated, "I ask, where are those people today? And if *Thomas* Lee was not with him on that night, where is he to testify for him?" An objection was made and sustained on the ground that there had been no testimony as to *Thomas* Lee, and the state went on to argue as to Lee's absence as a witness for appellant. While it would be improper for the state to argue as against appellant the failure to call a witness in his behalf where the witness was equally available to both parties, State v. Collins, 350 Mo. 291, 165 S.W.2d 647, 648, yet here the state's argument was retaliatory in nature. Counsel for appellant first opened up the matter of Lee's absence as a witness for the state. The state was thus entitled also to comment on the absence of Lee as a witness for appellant. See State v. Shilkett, 356 Mo. 1081, 204 S.W.2d 920, 926; and compare State v. Lorts, Mo., 269 S.W.2d 88, 92 [6–9]. No error appears.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

DONNELLY, P. J., MORGAN and FINCH, JJ., and HENLEY, Alt. J., concur.