Charles **RICHMOND**, Appellant,

v.

**STATE of Missouri**, Respondent.

No. 56935.

Supreme Court of Missouri, Division No. 2.

Sept. 11, 1972.

Charles J. Malloy, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Stephen D. Hoyne, Asst. Atty. Gen., Jefferson City, for respondent.

HOUSER, Commissioner.

Appeal [1] from an order overruling a Rule 27.26, V.A.M.R. motion to vacate a judgment and sentence of 15 years' imprisonment on a reduced charge of murder in the second degree, to which Charles Richmond pleaded guilty on October 27, 1970.

Richmond's motion to vacate, filed January 18, 1971, complained that the guilty plea was obtained by false promises and trickery (because allegedly told by counsel that any sentence imposed would run concurrently with a 20-year sentence previously imposed by the federal district court in another case) and that the sentencing judge, not having been informed about the federal conviction, was not fully and completely informed of vital matters existing at the time of the plea, which may have had a bearing on the disposition of the case.

The guilty plea was not involuntary because of mistake, misunderstanding or false promises. Richmond did testify at the evidentiary hearing that his counsel assured him that the 15-year sentence would run concurrently with his 20-year sentence, but there was evidence to the contrary which the trial court accepted in making its finding that there was no basis for Richmond's asserted belief that the sentences would run concurrently. Richmond's attorney testified that he made no such promises; that he told Richmond he did not think it possible to have the sentences run concurrently. The assistant circuit attorney, who conferred with Rich-

---

1. Notice of appeal filed before January 1, 1972.

mond and his counsel immediately prior to the entry of the plea, testified that he told Richmond that a state charge could not run concurrently with a federal charge; that although he could not remember whether the word "consecutive" was actually used in the conversation, it may have been mentioned that the sentences had to run consecutively; that it was "only on the basis of the consecutive terms that we reduced (the charge from first to second degree murder)." This testimony provided a substantial basis for the trial court's finding that the matter of concurrency was explained to Richmond "very plainly and that he understood" the situation before pleading, and that Richmond "was not induced to plead under the belief that the penalty imposed by the State Court was to run concurrently with that which had been imposed in the Federal Court." The court's finding on this issue may not be declared erroneous.

It is true that the trial court was not apprised of the 20-year sentence at the time the plea of guilty was entered; that there was no discussion in the court of concurrent or consecutive terms. These facts, however, do not vitiate the plea. If the court had been apprised of the federal conviction it would have been inappropriate and premature for the court to have made any order of concurrency since the federal conviction was not a final judgment. An appeal was pending. There was nothing upon which such an order could have operated. Any such order necessarily would have been made on a contingency, or subject to a future decision, which would have violated the rule that a sentence must be certain and definite. 24 C.J.S. Criminal Law § 1581a., pp. 553, 555. Furthermore, the two crimes—bank robbery and murder—were totally unrelated, having occurred at different times and places.

The federal sovereignty acquired custody of Richmond first. The murder occurred after he had been arrested on the bank robbery charge. From the record it is apparent that following the appeal of the federal conviction the federal authorities at least temporarily waived their exclusive right to exhaust federal remedies to the exclusion of state sovereignty, and under the principles of comity conferred upon Missouri jurisdiction of Richmond, for the purpose of trial of the state charge, see Montos v. Smith, 5 Cir., 406 F.2d 1243; Brown v. State, Mo.Sup., 452 S.W.2d 176, 178 [3–5]; 22 C.J.S. Criminal Law § 145 c., p. 388, fns. 64, 65, and apparently for the purpose of allowing Missouri to exhaust state remedies (for Richmond began service of his state sentence after the plea and is now serving that sentence). Upon the affirmance of the judgment of conviction in the bank robbery case by the federal court of appeals the appropriate court to enter any order of concurrency would be the federal court. Such an order, entered after final conviction, would relate to a sentence then being served under the state conviction. See Chaney v. Ciccone, 8 Cir., 427 F.2d 363, 365 [1]. Accordingly, there could have been no prejudice to Richmond arising out of the fact that the sentencing judge knew nothing of the federal conviction, and the circuit court did not err in finding that the fact that the federal conviction was not made known to the sentencing judge "makes no difference" since the two crimes were entirely separate and unrelated and the federal conviction was not final.

■ Nor was error committed in ruling against Richmond on his contention that he was given inadequate notice and time within which to determine whether to plead guilty and that he was not allowed to make a telephone call to his sister before entry of his plea. On the latter contention Richmond testified that before he went into the courtroom he requested permission to call his sister but that his counsel and the sheriff "said no calls." Richmond's attorney testified to the contrary that Richmond made no request to call his sister. Before entry of plea the judge asked Richmond if he had been denied the opportunity of talking with any member of his family and

Richmond answered in the negative. Accordingly there was a substantial basis for the court's finding that "There is no merit to (Richmond's) complaint that he was not permitted to talk to his sister in view of the testimony of his attorney."

▮ Nor is there substance to Richmond's complaint that he was not given adequate time to consider whether to accept the State's offer of a 15-year sentence on a reduced charge. During his 4-month confinement in jail prior to October 27, 1970 Richmond was told that the State would recommend life imprisonment on a plea of guilty to the charge of murder first. During that time the evidence shows that Richmond's counsel conferred with him 3 or 4 times. At 5:30 or 6 p. m. on October 27, 1970 Richmond was brought from the jail to the court building, where he was interviewed by his counsel in an anteroom behind the courtroom. There for the first time he was advised that the State would reduce the charge to murder second and recommend 15 years on a plea of guilty. Richmond inquired whether the sentence would run concurrently with the 20-year federal sentence. The lawyer testified that he told Richmond that he did not think it was possible; that different jurisdictions were involved; that there was an appeal pending in the federal case, and that the lawyer "did not think there was any chance it could be made concurrent"; that "the time would be consecutive." When his counsel "got (Richmond's) word that he would take a plea" he left the anteroom and informed the assistant circuit attorney of the fact. The two lawyers returned to the anteroom. A further conversation was had relative to the State's proposed recommendation. The State's attorney confirmed the proposal, asked Richmond if he was agreeable and willing to plead, and Richmond "said he was." Richmond again brought up the question of concurrency and was told by the assistant that "there was no way it could be done." Richmond's lawyer spent some time explaining to Richmond the procedure he could expect at the hearing. The time consumed in the anteroom prior to the entry of the plea was "a little longer" than half an hour. On this appeal Richmond contends that this was a hurried-up affair; that the plea was rushed through in a "now or never" atmosphere; that Richmond was not given adequate time to talk to his counsel and sister; that he should have been permitted to consider it overnight. The record does not bear out the contention. Richmond pleaded guilty after 4 or 5 conferences with his counsel. The last conference, at which he was informed of the State's offer to reduce the charge and recommend 15 years, lasted for more than 30 minutes, during which there was ample opportunity for Richmond to consult with counsel, and he was reassured with respect to the State's offer and disabused of any hope of concurrent terms. The transcript of the proceedings at the time the plea was entered occupies 9 pages. Richmond was asked and he answered 52 questions, testing his understanding and bearing on the voluntariness and propriety of his plea. Counsel were asked and answered 11 questions bearing on the case. The judge conducted a thorough, full exploration of pertinent matters in an exemplary manner. Richmond was fully apprised of his rights, the nature of the charge, the right to trial by jury, the privilege against self-incrimination, the right of confrontation, burden of proof, possible punishment upon a verdict of guilt or plea of guilty, etc. The court carefully elicited from Richmond facts showing unquestionably that he appreciated the situation confronting him and understood the nature and ramifications of the charge; that he was guilty under the facts recited by the State's attorney, and confirmed by Richmond; that he was entering the plea voluntarily, intelligently and with understanding. Richmond responded affirmatively to questions asked by the judge whether he had had ample opportunity to consult with his counsel; whether he had gone over the matter thoroughly with him and had told counsel "his side of the story"; whether

he had gone over it with his lawyer more than once; whether he was satisfied with the representation and advice given him by counsel; whether his counsel had permission and consent to speak for him and enter the plea of guilty for him; whether he had not been denied the opportunity to talk with any member of his family. There was a full compliance with Criminal Rule 25.04.

No error appearing, the judgment is affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the Court.

MORGAN, P. J., HENLEY and DONNELLY, JJ., and FINCH, C. J., concur.