STATE of Missouri, Respondent,

v.

Raymond L. TOLIVER, Appellant.

No. 59464.

Supreme Court of Missouri,
En Banc.

Dec. 30, 1976.

C. B. Fitzgerald, Warrensburg, for appellant.

John C. Danforth, Atty. Gen., Douglas G. Mooney, Asst. Atty. Gen., for respondent.

HENLEY, Judge.

Defendant, Raymond L. Toliver, convicted of stealing over $50, was sentenced under the Second Offender Act to ten years imprisonment. On appeal, the Missouri Court of Appeals, Kansas City District, reversed and remanded. The case was transferred to this court pursuant to our order and is decided as on original appeal. We affirm.

The sufficiency of the evidence is not disputed, and from the record, the jury reasonably could have concluded as follows: shortly before 1:30 p. m. on September 13, 1973, defendant and Richard Stevenson entered a Wal-Mart store in Warrensburg, Missouri. Defendant was wearing "baggy" overalls. Both men went to the sporting goods department. Defendant enticed the only clerk of that department away from her post near the gun display case to discuss outdoor heaters, allowing Stevenson to crawl "on all fours" and remove from the case 10 handguns valued at more than $800, which he placed in an oil pan. Defendant and Stevenson met later at a vacant checkout counter near the exit, where some 30 seconds of "arm movement" between the two men indicated the contents of the oil pan were being transferred to defendant's loosely-fitting clothing.

The two men left the store together and drove away in an automobile, which was later stopped by a state trooper who was reacting to a police radio bulletin concerning the alleged theft. Defendant had been driving about 80 m. p. h. with Stevenson and a man named Garner as passengers. After placing defendant under arrest for speeding and investigation of stealing over $50, the trooper gave defendant his "Miranda warnings," although defendant assured the trooper it was unnecessary to do so, because he had done nothing wrong. A search of the car and its occupants produced no handguns. The group was taken to patrol headquarters in Lee's Summit to be held for Warrensburg police, who were investigating the theft. At headquarters, Miranda warnings were read again and defendant was questioned about the theft. He denied the theft, saying he entered Wal-Mart to look for camping materials and had left when he could not find what he desired. When later taken to Warrensburg police headquarters, two more questioning episodes ensued preceded by Miranda warnings each time, but defendant made no statement. The three men were detained in the

Johnson county jail over night, and the next day, September 14, 1973, they were charged with stealing over $50 and released on bond.

The first point we consider is defendant's contention that the court erred in overruling his pretrial motion to suppress inculpatory statements made by him to officers of the Kansas City police department on November 22, 1973, because, he says, they did not inform him of his rights under the Fifth and Sixth Amendments of the United States Constitution as delineated in *Miranda v. Arizona*, 386 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

It is admitted by the State that the Miranda warnings were not given to defendant by the Kansas City police on the occasion of his statements to them that he and others were involved in the stealing of handguns from the Wal-Mart store in Warrensburg. The statements were made in the course of a general investigation of a Kansas City homicide which had been committed with a handgun having the same serial number as one of those stolen from the Wal-Mart store. Defendant, a resident of Kansas City and well known to its police, was not suspected of being involved in the homicide, although it was known that he had been charged in Johnson county with this stealing. Their inquiry of defendant was for the purpose of finding and identifying the killer by tracing this gun from defendant to the killer. Defendant told them that the guns had been taken to Kansas City where they were sold to a black man at a certain address for some dope. The purpose of the inquiry was not to secure evidence in support of the stealing charge. At the close of the motion to suppress hearing, the court remarked that "defendant had received the warning four times" from highway patrolmen and Warrensburg police only two months before, and, indicating that it was persuaded that defendant knew his "rights" when he made the statements, overruled the motion.

■ The testimony of the police officer at the trial before the jury was essentially the same as that heard by the court on the motion to suppress. Defendant made no objection to this testimony and participated in its presentation to the jury by his cross-examination. Defendant thus failed to keep alive and preserve for appellate review the question raised by his motion to suppress. *State v. Yowell*, 513 S.W.2d 397, 402–3[1, 2] (Mo.banc 1974) and cases collected therein. Our review of the briefs of the parties, the transcript of the evidence heard on the motion to suppress and the evidence at the trial on the merits, leads us to the conclusion that manifest injustice or a miscarriage of justice has not resulted from the receipt of testimony relating defendant's inculpatory statements made to the Kansas City police.

■ Another point raised by defendant is that the trial court erred in refusing to allow defendant's counsel to comment adversely upon the State's failure to produce a material witness endorsed on the information, namely, defendant's accomplice, Stevenson. The State apparently pursued diligently all reasonable means to secure Stevenson's presence but failed. He was no more "available" to the State than to defendant. *State v. Collins*, 350 Mo. 291, 165 S.W.2d 647, 648–649 (1942). In this situation, no unfavorable inference may be drawn from the State's failure to produce Stevenson. The trial court did not err. *State v. Houston*, 451 S.W.2d 37, 39–40 (Mo. 1970).

■ Defendant also contends that the court erred in overruling his pretrial motion which sought to limit the State's cross-examination of him concerning his previous convictions in the event he should decide to take the stand. Defendant asserts that the court's ruling deprived him of the right to make an intelligent decision before trial as to whether he should take the stand and subject himself and his testimony to an attack upon his credibility. Clearly, the State is entitled to inquire about prior convictions of a witness to affect his credibility. Section 491.050, RSMo 1969; *State v. Busby*, 486 S.W.2d 501, 503[1] (Mo.1972). The scope of such prior conviction inquiry is subject to the discretion of the trial judge

to act, upon timely objection, to prevent probing of convictions for any purpose other than to affect the witness's credibility. *State v. Scott*, 459 S.W.2d 321, 324[2] (Mo. 1970). Defendant's point is without merit.

Defendant further claims the trial court erred in overruling his motion to declare this court's Rule 25.34 unconstitutional and in refusing to excuse him from compliance with the State's request for disclosure of certain matters within the purview of the rule. The only information disclosed by defendant to the State as a result of this ruling was (1) the names and addresses of two witnesses (the sheriff and a deputy sheriff of Johnson county) he intended to call in his own behalf, and (2) that he did not intend to rely upon an alibi or a plea of not guilty by reason of mental disease or defect. Defendant has failed to show that he was prejudiced by operation of this rule; therefore, he lacks standing to challenge its constitutionality. *State v. Brown*, 502 S.W.2d 295, 305–306[20, 21] (Mo.1973); *State v. Mucie*, 448 S.W.2d 879, 886[1] (Mo. 1970). The court did not err in requiring defendant to disclose this information to the State.

Defendant's last point is that the court erred in ordering the 10 year sentence imposed by it be consecutive to a sentence he was then serving in the Kansas penitentiary, because, he contends, the court erroneously believed that under § 546.480, RSMo 1969, it had no discretion to impose a sentence that would run concurrently with the Kansas sentence. He argues that because of this error the judgment must be reversed and the case remanded so the trial court may exercise its discretion and resentence him.

He relies upon *State v. Baker*, 524 S.W.2d 122, 131[7] (Mo.banc 1975), which held that § 546.480 violated the equal protection clause of the Fourteenth Amendment of the Constitution of the United States. In that case there was a remand to the trial court for resentencing and the exercise of discretion by the trial judge as to whether the sentences imposed should be concurrent or cumulative.

The trial court's reliance upon § 546.480 as authority or reason for its order that this sentence begin upon completion of the Kansas sentence was misplaced and, therefore, error. That section, during its life, applied only to sentences imposed by Missouri courts for convictions of two or more offenses against the laws of this state; it did not apply to sentences, one of which was imposed by a court of another state for an offense against its laws and another by a court of this state for an offense against Missouri laws.

Notwithstanding the fact that the reason stated for the court's order is erroneous, the error is harmless and may be disregarded, because the Missouri sentence could not begin to run until defendant is released from the Kansas penitentiary and delivered to the custody of the Missouri department of corrections. Section 546.610; *Jackson v. Kaiser*, 353 Mo. 919, 185 S.W.2d 784, 787 (banc 1945); *Higlin v. Kaiser*, 352 Mo. 796, 179 S.W.2d 471, 472[1–3] (banc 1944). There is no statutory authority for a court of this state to order that a sentence imposed by it run concurrently with a sentence being served in another state. *State v. Brager*, 497 S.W.2d 181, 182–3[3] (Mo. 1973); *Richmond v. State*, 484 S.W.2d 280, 282[3] (Mo.1972); *Harkins v. Lauf*, 532 S.W.2d 459, 461–463[1, 2] (Mo.banc 1976). Sentences to the penal institutions of different jurisdictions are, in the very nature of things, cumulative and not concurrent. *Jackson v. Kaiser,* supra, 185 S.W.2d at 786–787[1–7]; *Harkins v. Lauf,* supra, at 463[2]. The error assigned by defendant did not prejudicially affect him and, under the facts and the law, a remand for resentencing would be futile and is not required.

The judgment is affirmed.

MORGAN, HOLMAN, FINCH and DONNELLY, JJ., concur.

SEILER, C. J., dissents in separate dissenting opinion filed.

BARDGETT, J., dissents in separate dissenting opinion filed.

SEILER, Chief Justice (dissenting).

I respectfully dissent for the following reasons. First, appellant's self-incriminatory statements to the Kansas City police should not have been admitted into evidence because he was neither apprised of his rights to remain silent and to be represented by counsel, nor did he voluntarily waive these rights. Second, under the facts of this case we should not require objection before trial, at trial, and after trial in order to deem appellant's objection to the admission of this testimony properly preserved. Last, I would hold that even if we find appellant's objection not preserved, the trial court committed plain error in admitting the self-incriminatory statements.

In evaluating the need for the Kansas City police to have given appellant his *Miranda* warning, it seems to me the majority opinion is somewhat equivocal. On one hand, the opinion implies that because warnings were given by different police agencies some two months prior to the incident in question, appellant had sufficient knowledge of his rights at the time of questioning. On the other hand, the majority intimates earlier in the same paragraph that because the appellant was not under suspicion for the crime the Kansas City police were investigating, he was not in custody to an extent which would require giving a *Miranda* warning.

The idea that residual knowledge from a warning delivered to a suspect by the police at the time of an arrest several months earlier is sufficient was expressly disavowed by the United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 471–72, 86 S.Ct. 1602, 1626, 16 L.Ed.2d 694 (1966) wherein it was stated:

"[W]e hold that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation . . . .. As with warnings of the right to remain silent and that anything stated can be used in evidence against him, this warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence

that the person may have been aware of this right will suffice to stand in its stead. Only through such a warning is there ascertainable assurance that the accused was aware of this right."

Furthermore, I am unable to agree with the majority opinion's view that appellant was not in custody to a degree which required a *Miranda* warning. It seems to me that clearly he was. The Supreme Court explained its holding in *Miranda* as follows:

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."

*Miranda v. Arizona*, supra, 384 U.S. at 444, 86 S.Ct. at 1612.

In the case before us, two officers, who knew that the appellant was charged with the theft of a gun which they had in their possession as the murder weapon in a homicide they were investigating, drove to appellant's residence in an unmarked state highway patrol car. According to their own testimony, upon arriving at appellant's residence, they got out of the car, went up to the house, pounded repeatedly on the door, "I really whammed it", and yelled for appellant to come out. The officers then placed appellant in the front seat of the car with one of the officers and a companion of appellant in the back seat with another officer. The two were driven downtown to police headquarters, separated from one another, and the appellant was questioned for one hour with three officers present. The foregoing hardly represents the general on-the-scene impromptu questioning the Supreme Court meant to leave unaffected by *Miranda*. It is true one of the detectives also testified that appellant simply accepted an "invitation" to go downtown to police headquarters and that he was free to go at

any time, although no one informed him of that fact, but this uncommunicated, self-serving, subjective belief on the part of the police does nothing, in my opinion, to lessen the custodial aspects of defendant's questioning. Appellant was deprived of his freedom in a significant way as contemplated by *Miranda*, and consequently, he has a right to *Miranda* warnings. Moreover, we have recognized the coercive atmosphere surrounding such police "requests". In *State v. Young*, 425 S.W.2d 177, n. 4, (Mo. 1968) we quoted with approval *State v. Owens*, 302 Mo. 348, 259 S.W. 100, 102 (banc 1924) to the effect that:

". . . [i]f an officer appears at a person's home, and in his official character demands the privilege of searching the premises, the owner of the premises who yields peaceably and silently to the official demand is as much under constraint as if he had forcibly resisted official interference."

The same holds true for the police request here to go downtown. It was permeated with the coercive atmosphere presented by the apparent force of law. That required a *Miranda* warning be given.

The majority cites *State v. Yowell*, 513 S.W.2d 397 (Mo.banc 1974) for the proposition that the appellant, by neglecting to raise an objection at trial to the admission of his self-incriminatory statements to the Kansas City police, has failed to preserve this question for appellate review. *Yowell* explains, however, the reason for requiring an objection to the admissibility of evidence prior to trial in a motion to suppress, at trial, and after trial. One of the more important reasons, as explained by *Yowell* at 402–03, is to prevent judicial confusion and to preserve an orderly system of justice.

"The judge presiding over the trial would not necessarily know what transpired at the hearing on the motion to suppress nor would he know with any degree of particularity what items of evidence were the subject of the motion. The hearing of pretrial motions by a judge who does not preside at the trial itself occurs frequent-

ly in multiple-judge circuits and also occurs when a motion for change of judge is filed and granted in other circuits after the motion to suppress has been heard and decided."

In the case before us, this reason for the rule does not exist. The parties in the case had just finished arguing the motion to suppress for two hours in front of the judge who presided at the trial which began immediately following argument on the motion. Furthermore, objection to admission of the statement was made again immediately after the state rested its case and again in the motion for new trial. Additionally, there is nothing to indicate that had the objection been made at trial immediately prior to the statement, the trial judge would have changed his mind from his ruling a few hours earlier and sustained the objection. Nor is there any indication that defendant has advanced any reasons for his objection other than those first presented to the court. The objection all along was that appellant had not been given the *Miranda* warning. In this case I would not require an objection at trial because to do so would be to require a needless act.

Last, even if objection at trial is required, I would review the admissibility of these self-incriminating statements as plain error affecting substantial rights which would result in manifest injustice or miscarriage of justice under Rule 27.20(c). See *State v. Rapp*, 412 S.W.2d 120 (Mo.1967); *State v. Beasley*, 404 S.W.2d 689 (Mo.1966). As to whether this is plain error, I agree with what Turnage, P. J., who wrote the court of appeals opinion reversing and remanding this case said, as follows:

"As revealed from the statement of facts heretofore given, it is apparent the State's case rests on an entirely different footing without the admission of the defendant's statement given to Detective Watson. It can certainly be said that without this statement the State does not have nearly as strong a case. It is obvious the defendant would be in a much different position before the jury without the statement in evidence. The resultant

material weakening of the State's case by excluding the statement is sufficient to demonstrate the admission of the statement affected defendant's substantial rights. This resulted in manifest injustice to defendant. Under Rule 27.20(c) this is plain error requiring a new trial."

BARDGETT, Judge (dissenting).

I respectfully dissent. The first entry in the record of the trial of the case states: "The trial began on Wednesday, December 4, 1974, before the Honorable Robert G. Russell, Judge of Division 2 of the Circuit Court of Johnson County, Missouri, at Warrensburg and a jury, which was impanelled, selected and sworn." Thereafter a hearing on several motions was held including defendant's motion to suppress the oral confession out of the hearing of the prospective jurors. The ground alleged in the motion to suppress is that the alleged oral statement was given without adequate warnings as required by *Miranda v. Arizona*, 386 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The record reflects that a discussion took place between court and both counsel with respect to what particular evidence the state was going to introduce before the jury and what evidence the state did not intend to introduce. This was for the purpose of limiting the hearing to those matters which the state declared it would offer in evidence and that resulted in the prosecutor stating he intended to introduce the testimony of detective Maurice Watson of the Kansas City police department to prove up the oral confession of the defendant. The tenor of this hearing, as shown by the record, zeroed in on the *admissibility into evidence* of the oral confession during the immediate impending trial as perhaps distinguished from the tenor of hearings generally on motions to suppress where the question of whether the particular item will be offered in a later trial is not resolved. This distinction may seem tenuous but as I read this record the hearing on this motion was, for all pretrial purposes, a hearing that took place during the trial consequent to an objection by the defendant to the immediate introduction into evidence of the oral confession.

As stated in the principal opinion and the court of appeals opinion, the defendant was not advised of his rights—"*Miranda* warnings"—prior to being interrogated by the police and giving an oral inculpatory statement.

At the conclusion of the hearing the trial court overruled the motion to suppress the oral confession stating, "The Defendant had received the warning four times. Whether this was a custodial or noncustodial interrogation, I don't think there's any question but what he had previously been apprised of what his rights were. I don't think it's necessary that the Police very time they question him, they give him the warnings. The Court certainly feels that the further interrogation and investigation was not a custodial interrogation."

The reference to defendant having received the warning four times was to previous independent occasions and not to the instant interrogation.

After taking up some other matters pertaining to evidence that would be offered in trial and disposing of certain objections, the court immediately proceeded with the voir dire examination and the jury was selected. All of the evidence was received that same day with the last witness for the state being detective Watson who testified to the oral confession. The defense did not repeat its objection to the admission of the confession at that time, but the first entry in the record of the second day of trial reflects the following:

"MR. FITZGERALD: Your Honor, at this time, the Defendant moves the Court to strike the testimony of Witness Watson, as the same pertains to the statement of the Defendant given in November, 1973, and to instruct the Jury to disregard it on the grounds it is incompetent for all the reasons assigned in the motion to suppress hereinbefore filed with this Court.

"THE COURT: Well, the motion will be overruled on two bases. Number One, the Court feels that there is a proper foundation for the admission of the statement, as

the Court indicated at the suppression hearing, and that the—

. . . . .

"THE COURT: First, that the interrogation was not a custodial interrogation. Secondly, that the Defendant had been adequately warned previously concerning his rights in the matter. And secondly (sic), that the objection is untimely. It comes after the testimony has been admitted."

In view of the fact that the motion to suppress was taken up and heard for all practical purposes during the trial and that the tenor of that hearing was that the court was then and there determining the admissibility of the confession in the trial and not just ruling on a pretrial matter, I am convinced that the attorneys and the court considered that the court's ruling on the motion to suppress constituted a ruling on the in-trial admissibility of the confession. This was the same as if the trial itself had been interrupted so as to afford a court hearing on the admissibility of the confession on objection by the defendant made at the time the witness Watson took the stand. In my opinion this view is buttressed by the court's response to the defendant's motion to strike the testimony of detective Watson as to the confession in that the court repeated the same reasons for overruling the motion to strike as it gave for its decision in overruling the motion to suppress. I am mindful of the fact that the court added to its previous reasons that the motion to strike was untimely as coming after the testimony was admitted. Nevertheless, on the facts of this case, I would hold that the objection to the oral confession had been preserved at trial and is reviewable on appeal.

The facts of *State v. Yowell*, 513 S.W.2d 397 (Mo. banc 1974), and *State v. Bryson*, 506 S.W.2d 358 (Mo.1974), (authored by the undersigned), are distinguishable from the circumstances of the instant case as set forth in the dissent of Seiler, C. J., in this case. However, I do not agree with the observation made in the dissent of SEILER, C. J., that the principal opinion implies that because warnings were given by different

police agencies on other occasions that these prior warnings satisfy the requirements of *Miranda*. As I read the principal opinion, it simply holds that the defendant did not preserve the error for appellate review and declines to review the issue under the plain error rule. As stated supra I would hold that the error was preserved for appellate review.

In my opinion, *Miranda* required that the defendant be advised of his rights prior to the police interrogation in the instant case and therefore the trial court erred in holding the oral confession admissible. I would reverse and remand this case for a new trial.