**STATE of Missouri, Respondent,**

v.

**Ray Alvin YOWELL, Appellant.**

No. 58475.

Supreme Court of Missouri,
En Banc.

July 22, 1974.

Rehearing Denied Sept. 9, 1974.

398

John C. Danforth, Atty. Gen., David Robards, Asst. Atty. Gen., Jefferson City, for respondent.

Charles A. Powell, Jr., Macon, for appellant.

HOLMAN, Judge.

Defendant, Ray Alvin Yowell was charged with the offense of forcible rape. See Section 559.260 [1]. He was also charged with a prior felony conviction. Section 556.280. The jury found the defendant guilty and the court fixed his punishment at imprisonment for a term of 10 years. The defendant first appealed to this court but we were of the view that jurisdiction was in the Missouri Court of Appeals, Kansas City District, and the case was accordingly transferred to that court. The court of appeals adopted an opinion which reversed the judgment and remanded the case for a new trial. Upon application of respondent we ordered the case transferred to this court. It will be determined here the same as on original appeal. We affirm.

Jackie (prosecutrix) testified that on February 24, 1971, she worked at Banquet Foods in Macon; that at first she had commuted from her home in Moberly but at the time in question shared a trailer home in Calleo with Darla; that on February 24, she and Darla worked from 3:45 p. m. until 11:45 p. m.; that after leaving work they went to Hedricks Laundromat to do their laundry; that while waiting for their clothes to wash they saw two young men (later identified as defendant and Randy Elam) enter the laundromat and go toward the soft drink machine; that shortly thereafter the defendant came at her with an empty pop bottle and hit her on the cheek bone and she fell to the floor; that she fainted and when she recovered consciousness defendant was on top of her beating her head against the floor; that he said "You bitch, get up" and dragged her out the door to the car; that she was crying and asked him to let her go; that she saw Darla struggling with the other boy; that defendant threw her into the back seat of the car; that as she was trying to get out and was pushing on his face her thumb got into his mouth and he bit it, causing a deep gash and profuse bleeding. She further testified that Elam got Darla into the front seat of the car; that Darla was trying to get out, and defendant grabbed her by the hair and pulled her back over into the back seat; that after they started to drive away, defendant instructed Elam to drive back to the laundromat and get the pop bottle and anything else that might have fingerprints on it, which he did; that after the car was driven into the country for twenty or thirty minutes Elam parked, and defendant started to undress her; that she was scared to death because she had had a school friend who had been killed during a rape; that defendant said he had a rope in the back and "if I didn't put out" he would tie her up; that she continued to resist as much as she could, but defendant got her partially undressed and was able to insert his private parts into her female parts; that

1. Statutory references are to RSMo 1969, V.A.M.S.

while she fought and tried to push away she may have partially "given up in fear."

She further testified that after the intercourse was completed, she dressed and then defendant made her get into the front seat of the car; that Elam then pulled Darla over into the back seat; that Darla was crying and begging him not to hurt her and Elam told her that if she went along with him he wouldn't hurt her; that after a time, defendant pulled her back into the rear seat and Darla and Elam got back into the front seat, and they drove back to the laundromat and the boys then left; that they got their coats and Darla's purse which were still in the laundromat, and put their wet clothes in a basket, and immediately drove home; that after arriving home, they locked the door and called the highway patrol, who referred them to local officers; that they then called the sheriff who said he would be over in the morning to see them; that it was then about 4 a. m. Jackie further stated that when the sheriff came the next day, he immediately took them to see the prosecuting attorney and then to the highway patrol office where pictures were taken of their injuries; that they then went to the office of Doctor Collins. Jackie further testified that she had a bruise on her right arm, a black eye, a big scrape on one cheek, a cut near her ear, bruises on her legs and a scratched area on her left hip; that her blood type was A positive.

Darla testified that she thought she remembered Randy Elam from school days, although he was behind her in school, and that during the time they were together she heard Elam call the other boy "Ray" and that she gave that information to the officers; that when Randy came at her in the laundromat he hit her on the head with a coke bottle and it broke; that a lot of her hair was pulled out when she was pulled to the back seat of the car. She identified an exhibit of hair taken from the car as being hers. She further stated that she was sexually assaulted by Randy in the back seat of the car. On all other matters, Darla's testimony was substantially the same as Jackie's and will not be repeated here.

Doctor Gretchen Collins testified that she saw Jackie and Darla on the afternoon of February 25; that both girls gave a history of having been assaulted and raped earlier that day; that Jackie was exceptionally disturbed and was in shock; that Jackie had abrasions all around the right eye, and sort of a knot between the eye and ear; that her thumb was lacerated and showed teeth marks and was red, swollen and infected; that she had a severe abrasion on her right elbow and scratches on her lower left leg and thigh; that she cleaned and bandaged Jackie's thumb and gave her medicine for the bruises and swelling, and also gave her a shot of penicillin. She further testified that Darla had a tremendous bump on the back of her head together with a number of other scratches and bruises.

Claude Nuhn, Sheriff of Macon County, testified that from the interview with the two girls he was able to determine the identity of the two men; that he took the girls to the prosecuting attorney's office and then obtained a warrant for the arrest of defendant and Elam; that he and his deputy saw the defendant's car at a sale-barn where he was employed but that defendant was not there; that they observed that there was blood on the back seat cover of defendant's car; that they later arrested Elam at a Macon theater; that defendant was arrested at about 11:30 p. m. at a filling station in New Cambria where he lived.

Deputy sheriff Kenneth Cox testified that he was with the sheriff at the time they observed the defendant's car at the sale-barn; that it had an area on the plastic rear seat cover where blood had trickled down the front of the seat; that later that night they observed defendant's car at a filling station in New Cambria and arrested the defendant there; that as they were about to leave, defendant gave him the car keys and asked him to move the

car around to the side of the building which he did; that he retained the keys after locking the car; that later that night he went back and picked up the car and drove it to the highway patrol station near Macon where it was parked and again locked; that later that day he went back and searched the car; that he found strands of hair under the front seat and a horse-hair type woven rope in the trunk; that he later took the seat cover from the rear seat and delivered it to Sergeant Burnett of the highway patrol.

Sergeant Burnett, an evidence technician and investigator for the highway patrol, testified concerning photographs which he took of the two girls. He further testified that he took the seat cover and put it in a bag and delivered it to the laboratory in Jefferson City.

Michael J. Brezzandine, a laboratory technician for the highway patrol in Jefferson City, testified that he tested the blood from the seat cover and it was type A. He further testified that he examined two samples of human hair delivered to him (that which had been found in the car and a piece cut from Darla's head); that from the number of scales and the size and shape he concluded that they had similar characteristics.

The defense presented Randy Elam and the defendant as witnesses. They testified that they were together on the night of February 24 and that they had been in Brookfield and in Marceline looking for girls, but without success; that they drove to Macon and decided to stop at the laundromat to get a coke; that upon entering the laundromat they visited with the two girls there and asked them if they would like to go for a ride while their clothes were washed; that they drove some distance from Macon and parked for a time and then decided to drive to where Randy's car was parked so that they could separate, with one couple in each car. Each of these witnesses testified that he had intercourse, defendant with Jackie and

Randy with Darla, but that it was entirely voluntary on the part of each girl; that Randy and Darla returned to defendant's car and that they took the girls back to the laundromat. Defendant testified that they bought the girls a coke and that Jackie then said something about wanting five dollars and that he replied: "I have had better for the price of a coke"; that Jackie then said: "Damn you" and started to swing a bottle at him; that he grabbed her and they scuffled and fell to the floor; that Darla started to take part in the fight and he shoved her back; that in some way Jackie got her thumb in his mouth and he bit it.

It developed upon the cross-examination of Randy that after his arrest he was taken to the office of the prosecuting attorney and interviewed by him and several officers; that he made a statement or confession which was reduced to writing and signed by him; that in his confession he stated that they had struck the girls with pop bottles in the laundromat and forced them into the car and that they then drove to a point on the "old highway" where they had intercourse with the girls; that they then took the girls back to the laundromat and bought them cokes; that on the way home defendant had told him that "he had told the big girl that he had a rope in the trunk and he would tie her up if she didn't submit willingly. He said he didn't think the girls would tell on us." It was further shown that Randy had entered a plea of guilty to a charge of raping Darla and was sentenced to a term in the penitentiary; that prior to the trial of defendant he had been released on parole and had returned to Macon County. As indicated heretofore, he repudiated his confession and maintained that he was innocent of rape and testified to facts favorable to the defendant. There was a great volume of testimony (elicited after the statement had been admitted in evidence) concerning the voluntariness of Randy's confession, but it would serve no purpose to state that testimony in detail in this opinion.

Defendant offered the testimony of seven witnesses who testified that his reputation in the community for "truth and veracity" and for "peacefulness and quietude" was good.

Prior to trial defendant filed a motion to suppress three items taken by the deputy sheriff from his car, i. e., (1) the back seat cover (2) the strand of hair found under the front seat and (3) the piece of rope found in the trunk. Evidence was heard and the motion overruled. The evidence indicated that the officers had a warrant for defendant's arrest but not a search warrant; that they observed defendant's car on the afternoon of February 25 and saw the blood on the back seat cover; that when defendant was arrested he asked Deputy Sheriff Cox to move his car and did not request a return of the key so it was retained by Cox; that later that night Cox moved the car to the highway patrol grounds; that later that day (the 26th) he searched the car for a gun defendant had told Jackie he had in the car and saw the strand of hair and the rope; that two days later he removed the three items from the car and delivered them to Sergeant Burnett. Cox further testified that the car was kept locked during the time it was impounded.

Defendant's first point is that the trial court erred in overruling the motion to suppress and subsequently admitting the said items in evidence during the trial. It is said that the search cannot be justified as incident to the arrest because it was not made at or near the time or place of the arrest. Among other things, the State contends that the car was an instrumentality of the crime and that it and its contents were lawfully seized; also that the seat cover and perhaps the strand of hair were properly seized under the "plain view" doctrine.

We have concluded that we need not determine the validity of the search in question because the alleged error in admitting the said items in evidence

has not been preserved for review. This for the reason that it has long been the rule in this state that "The validity of a search and the admissibility in evidence of the fruits of that search present issues collateral to the issue of guilt which are to be tried independently, State v. Dalton, Mo., 23 S.W.2d 1, and 'Not only must defendant file a motion to suppress the controverted evidence, but he has the burden of presenting evidence to sustain his contentions.' State v. Holt, supra, 415 S.W.2d [761] at p. 764; Supreme Court Rule 33.03(a)(5), V.A.M.R.; State v. Jonas, Mo., 260 S.W. 2d 3. He must also keep the question alive by timely objection, State v. Tunnell, 302 Mo. 433, 259 S.W. 128; State v. Hepperman, 349 Mo. 681, 162 S.W.2d 878, and by preservation of the issue in a motion for new trial. State v. Lord, [Mo., 286 S.W. 2d 737] supra. The only exception under our procedural rule is where the defendant 'had no reason to anticipate the evidence would be introduced and was surprised.' State v. O'Brien, supra, 252 S.W.2d [357] at p. 359." State v. Fields, 442 S.W.2d 30, 33 (Mo.1969). See also, State v. Bryson, 506 S.W.2d 358[2] (Mo.1974), State v. Simone, 416 S.W.2d 96[11] (Mo.1967), State v. Daniels, 487 S.W.2d 465[1] (Mo. 1972), State v. Caffey, 457 S.W.2d 657[3] (Mo.1970), Schleicher v. State, 483 S.W.2d 393[1] (Mo.1972), and State v. Brownridge, 459 S.W.2d 317[7] (Mo.1970). Defendant raised the point of unreasonable search and seizure in his motion to suppress and complained of the ruling in his motion for new trial but failed to object to any of the items when they were offered at the trial.

It has been suggested that none of the cases have stated any reason for the requirement that an objection be made to the introduction of the evidence at trial. The defendant's brief was written before our recent decision in State v. Bryson, supra. Therein it is stated that "This case demonstrates the soundness of the rule enunciated in State v. Simone, *supra*. Here the motion to suppress was heard and decided by a circuit judge who did not preside over

the trial. The judge presiding over the trial would not necessarily know what transpired at the hearing on the motion to suppress nor would he know with any degree of particularity what items of evidence were the subject of the motion. The hearing of pretrial motions by a judge who does not preside at the trial itself occurs frequently in multiple-judge circuits and also occurs when a motion for change of judge is filed and granted in other circuits after the motion to suppress has been heard and decided. Additionally, trial strategy can account for not objecting to some items of evidence at the trial. In any event, the judge presiding at the trial must at least be informed of a party's objection to evidence at trial before an alleged error stemming from the admission of the same can be considered on appeal. To hold otherwise would be to allow a party to sit idly by while evidence was admitted, take his chances with a jury, and then if he loses to bring up a matter for the first time on appeal that had never been presented to the trial judge. This is simply not conducive to an orderly system of justice and is not acceptable." 506 S.W.2d 361. In addition to what was said in Bryson we suggest that it is entirely possible that after hearing the evidence on motion to suppress the defendant's attorney may become convinced that his motion was without merit. The required objection will therefore serve to advise the court as to whether the defendant continues to consider the evidence inadmissible. Also, even if the judge that heard the motion is presiding at the trial, upon objection to the evidence he may desire to reconsider his prior ruling. We think the foregoing demonstrates sound reasons for the requirement.

■ In oral argument defendant suggested that, in any event, we should review the point under Rule 27.20(c), V.A.M.R. We deny this belated request for the reason that our review of the transcript and briefs has not indicated that "manifest injustice" has resulted from the admission of the items in question.

Prior to the voir dire examination of the panel defendant's counsel requested that the prospective jurors be examined in groups of "six to twelve." The court in ruling on that request stated: "I think that it will very substantially expedite the selection of the jury if we do have voir dire of the entire panel. I will allow an individual voir dire as it appears to be required in response to the general questions." Counsel also requested that the court advise the panel that female jurors were entitled to be excused upon request. The court in response stated: "I will make a reference to this exemption in my remarks to the jury, but I will not allow counsel to further inquire as to it. I will advise the jury panel that women, upon request, are entitled to be excused from jury service." Defendant contends that the court erred in denying the first request and in not allowing him to examine the female jurors in regard to their desire to be excused under Section 22(b), Art. I, Mo.Const. and Section 494.-031. No case is cited which supports either contention.

■ The trial judge is vested with broad discretion in controlling voir dire examination and his rulings will not be disturbed unless they clearly indicate an abuse of his discretion. State v. Crockett, 419 S.W.2d 22 (Mo.1967), Barnes v. Marshall, 467 S.W.2d 70[3] (Mo.1971) and State v. Munch, 57 Mo.App. 207[4] (Mo.App.1894). We think it is obvious that the trial court did not abuse its discretion in either of the respects complained of.

■■ It is next contended by defendant that the court erred in excluding proffered evidence that Jackie had had an illegitimate child prior to February 25, 1971. This contention is without merit. We have heretofore stated that "As a general rule, in a prosecution for rape where consent or lack of resistance is an issue, an attack upon the character of the prosecuting witness for morality and chastity can only be made by evidence of her general reputation in that regard and not by proof of

specific acts of misconduct with other men." State v. Kain, 330 S.W.2d 842, 845 (Mo.1960). We think the excluded evidence indicated, at most, a specific act of misconduct with another man and therefore the ruling of the court was correct.

■ The defendant also complains of the fact that Jackie was permitted, over objection, to identify defendant during the trial as the person who had assaulted her even though it was admitted that defendant was with her on the night in question. No authority is cited in support of this contention and it is so obviously without merit that it is overruled without further discussion.

In the direct examination of Dr. Collins the following occurred:

"Q Would you tell the jury what type of medicine you gave her?

A I gave her 2.4 milliunits of penicillin by shot.

Q Did you give the penicillin solely for the thumb injury or was it for some other purpose also?

MR. POWELL: Object to his leading the witness.

THE COURT: Sustained.

MR. FOLEY: What was the reason you gave the penicillin?

MR. POWELL: Object to this answer, Judge. I don't see why she gave her the penicillin has any relevancy in this case.

THE COURT: Overruled.

A I assumed that anyone who had been raped—

MR. POWELL: I don't think she's entitled to state her assumption, Judge.

THE COURT: Is that an objection?

MR. POWELL: I object to the answer.

THE COURT: Overruled. You may complete the answer.

THE WITNESS: That I was trying to prevent the girl from getting gonorrhea.

MR. FOLEY: Which is what type of disease?

A A venereal disease.

Q So it served that purpose. And did it serve another purpose?

A Also to take care of the infection of the thumb."

It is defendant's contention that said evidence was irrelevant and was prejudicial because it left the erroneous impression with the jury that defendant had gonorrhea.

■ While we agree that the testimony was irrelevant we do not think its admission constitutes reversible error. We have the view that the jury would interpret this testimony as indicating that the giving of penicillin to rape victims is routine treatment to prevent venereal disease. At the time of this treatment defendant had not been arrested and had not been identified by Jackie. There was nothing to indicate that Dr. Collins had any information concerning defendant. Moreover, if defendant's attorney was concerned that the jury would get an incorrect impression concerning the matter he could have resolved any doubt by his cross-examination of the witness. Having failed to do so he could later have shown defendant's freedom from venereal disease when defendant testified.

■ Defendant's next point is that the court erred in permitting Jackie to testify that she may not have resisted to the utmost because she was afraid defendant would kill her and that a former schoolmate, Anita Smothers, had been killed during a rape. Since this matter was not mentioned in the motion for new trial it has not been preserved for review. State v. Hernandez, 325 S.W.2d 494[3] (Mo. 1959). We decline to review this contention under Rule 27.20(c) because we are convinced that this testimony did not result

in "manifest injustice or miscarriage of justice."

The next point briefed by defendant is that he was prejudiced by the admission in evidence of the seat cover from his car because it "was never then or ever related to or connected up as relevant in any way to the complaining witness, or to support her testimony or version of events." He concedes that there was no objection at trial and that this point was not raised in the motion for new trial but claims that it constitutes plain error. We find this contention difficult to understand since Jackie testified she was in the back seat while her thumb was bleeding and the blood on the seat cover was shown to be the same as Jackie's, Type A. The evidence was relevant and properly admitted.

Defendant also complains of the admission in evidence of State's Exhibit 31 which was a statement or confession of Randy Elam which implicated defendant. The proceedings relating to its admission appear as follows:

"MR. FOLEY: We offer into evidence State's Exhibit 31.

MR. POWELL: It purports to be—I presume, a statement or confession of an accomplice in an offense that is jointly charged, and we object to it as being admitted in evidence against Ray Yowell.

THE COURT: Allow me to examine it. I think perhaps the exhibit is long enough I can examine it during the recess. It is time we take a recess. * * * (At this time a recess was had.)

THE COURT: Court is again in session. Gentlemen, on State's Exhibit 31, the objection to the exhibit is overruled and the exhibit is received in evidence for the sole purpose of impeaching the credibility of the witness. The exhibit is not received in evidence, Ladies and Gentlemen of the Jury, for the purpose of proving the guilt or innocence of the Defendant but merely for the purpose of impeaching the credibility of this witness."

The principal argument asserted in the brief is that the statement was not admissible because it was not voluntary and that the court should·have held a hearing to determine that issue before it was admitted. Defendant is in no position to maintain that argument. It will be noted that there was no request for a hearing on that issue and furthermore that defendant did not assign any reason for his objection.

Elam's testimony at trial was in direct conflict with the relevant contents of the statement. When the statement was presented to him he admitted that he had the conversation with the officers and that after the statement was prepared he had signed it. It is an elementary rule in this state and elsewhere that a contradictory statement of this nature is admissible for the purpose of impeaching the testimony of the witness. Moreover, the fact that the statement is hearsay as to defendant does not preclude its admission for the limited purpose of impeachment. Nelson v. O'Neil, 402 U.S. 622, 91 S.Ct. 1723, 29 L. Ed.2d 222 (1971). See also, Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Defendant concedes that he cannot assert any constitutional right on behalf of Elam. We rule this point against defendant.

During its deliberations the jury requested that Elam's statement be sent to the jury room. The court decided to grant the request and directed the sheriff to deliver the exhibit to the jury. At that time defendant's counsel stated: "For the record, I object to it." Defendant now contends that such was error. He concedes that the delivering of exhibits to the jury is a matter within the discretion of the trial court but says that in this instance the court abused that discretion. He also contends that a written instruction should have been given the jury as to the limited effect that should be given the exhibit. He did not request such an instruction.

We rule that the court did not abuse its discretion in allowing the jury to

have the exhibit. The testimony of Elam was of vital importance in this case. No doubt the jury spent considerable time in deciding whether or not it was true. The statement was substantial impeaching evidence bearing on that issue. It was a reasonable request for the jury to ask that it be permitted to examine it. Also, it should again be noted that at the time it was admitted the court gave a correct and emphatic instruction to the jury as to the limited effect that should be given to the statement. The court did not err in failing to give a written instruction concerning the limited purpose for the admission of the exhibit. Such would have been a cautionary instruction which need not be given unless requested. State v. Wing, 455 S. W.2d 457[14] (Mo.1970).

Instruction No. 3 contained the following: "But to constitute such intercourse it is not necessary that you should believe that there was an emission or discharge." Defendant contends that such was error because it was not relevant to any issue in the case. While the quoted portion of the instruction did not relate to an element of the offense it was cautionary in nature and did not constitute error. Jackie had testified that she did not think defendant had an emission and defendant stated definitely that he did not. The cautionary statement in question merely served to advise the jury that an emission was not an element of the offense. It could not have been prejudicial to defendant.

Defendant's next point is that Instructions No. 3 and No. 4, when considered together, were misleading and confusing because they submitted "two distinct hypotheses upon which the jury might predicate a finding of guilt." No. 3 submitted the utmost resistance theory and No. 4 submitted the theory of submission to intercourse resulting from threats of personal violence and fear. We will not decide this contention because it was not mentioned in the motion for new trial and hence is not before us for review.

Five days after the trial was concluded the prosecuting attorney sent a letter to each of the jurors in which he set out a number of alleged facts tending to show that defendant was guilty. He stated that these facts could not be shown at the trial because of rules of evidence. The jurors were also, in a sense, congratulated for their assistance to the cause of law enforcement. A copy of the letter was sent to the trial judge who later directed the prosecuting attorney to send a copy to defendant's attorney.

Defendant is somewhat vague as to the relief sought by reason of this letter. He concedes in his brief that "no specific prejudice was shown or can be shown." This letter, of course, could not have affected the trial in any manner. There was some suggestion on oral argument that it could have influenced the judge in ruling on the motion for new trial but we are definitely of the opinion that such did not occur. We rule that the letter does not constitute any ground for reversing the judgment. We suggest that it would seem to be the better policy for attorneys not to write to former jurors in the manner described.

The judgment is affirmed.

All concur.