**Ray Alvin YOWELL, Petitioner,**

v.

**Donald W. WYRICK, Warden, Respondent.**

**No. 74 CV 546-W-1.**

United States District Court, W. D. Missouri, W. D.

Jan. 14, 1975.

Charles A. Powell, Jr., Macon, Mo., for petitioner.

John C. Danforth, Atty. Gen., of Mo., Philip M. Koppe, Preston Dean, Asst. Attys. Gen., Jefferson City, Mo., for respondent.

MEMORANDUM AND ORDER GRANTING HABEAS CORPUS

JOHN W. OLIVER, District Judge.

I.

This State prisoner habeas corpus case presents a Fourth Amendment search and seizure question. We find and conclude that petitioner is entitled to relief for reasons we shall state.

The parties agree that petitioner has fully exhausted available State court remedies. In the trial court the petitioner filed a pretrial motion to suppress the allegedly illegally seized evidence, which was denied after hearing. After trial, the petitioner filed a motion for new trial, relying in part upon the following ground:

The Court erred in overruling defendant's Motion to Suppress Evidence, heard before trial, and which motion is incorporated by reference herein as if fully set out, and in admitting into evidence specified articles taken by means of said unlawful search and seizure, and in further admitting testimony respecting said articles gained by peace officers as result of and by means of such search and seizure, and particularly as regards the following:

a. A piece or roll of rope, specified in said motion and taken from the trunk of defendant's automobile on March 2, 1971.

b. A specimen or specimens of hair, specified in said motion, allegedly found and taken from under the front seat of defendant's automobile on March 2, 1971.

c. Seat cover taken from the back seat of defendant's automobile on March 2, 1971. [Tr. Vol. III, pp. 591–592]

The Missouri Court of Appeals, Kansas City District, reviewed petitioner's conviction on direct appeal and reversed and remanded the case for new trial on the express ground that "the motion to suppress should have been sustained and the admission into evidence of the aforesaid items should have been refused." As will be noted, however, the Supreme Court of Missouri, upon the respondent's application, ordered the case transferred to that court, considered the case as an original appeal, and determined that it would not consider the federal search and seizure question presented on the merits.

Though these circumstances make it clear that there has been sufficient exhaustion of state remedies, it is also clear that under current rules of decision of the Supreme Court of Missouri, as announced in Fields v. State, (Mo. Sup.Ct.Div. 2 1971) 468 S.W.2d 31, 32, petitioner cannot later obtain a postconviction review of the federal question presented in this case. That case expressly states that "a claim of illegal search and seizure is not such a matter as may be raised in Missouri under S.Ct. Rule 27.26."[1] It is thus apparent that the Supreme Court of Missouri has

---

[1] The Supreme Court of Missouri stated in the cited case that:

We acknowledge the rejection of this position by the United States Court of Appeals for the Eighth Circuit on May 24, 1971. Frazier v. Roberts (Steed), 8 Cir., 441 F.2d 1224 (opinion written on petition for rehearing). We regret the extent to which the problem presented may endanger "the delicate federal-state relationship in the criminal law enforcement field." However, we decline to consider appellant's unlawful search and seizure claim under the circumstances in this case. Our holding, of course, "will not preclude inquiry into [appellant's] claim in a federal habeas corpus proceeding." Frazier v. Roberts (Steed), supra, 441 F.2d 1224. [468 S.W.2d at 32].

Fields, of course, immediately filed a petition for federal habeas corpus in the Western District of Missouri. That court considered the Fourth Amendment question on the merits and denied relief. The Court of Appeals for the Eighth Circuit affirmed in Fields v. Swenson, (8th Cir. 1972) 459 F.2d 1064. Discussion of Missouri's procedural rules is redundant in light of the following from the Eighth Circuit's opinion in Fields v. Swenson:

No motion to suppress the evidence in dispute was made in advance of trial nor was the legality of the arrest and search raised at trial. The Missouri Supreme Court refused to consider the issue, holding that the procedural rules of Missouri require that a claim of an unlawful search and seizure must be made by motion to suppress evidence in advance of trial. Nothing in the record before us, however, suggests a "deliberate bypass" of the duty and privilege to vindicate federal claims in the state court. This Court is therefore not precluded from inquiry into that claim in a federal habeas corpus proceeding.

refused to review the federal search and seizure question presented on direct appeal and that it would also refuse to review that question when and if presented by a Rule 27.26, V.A.M.R., postconviction motion. Under the circumstances, this Court is forced to consider and decide the question on the merits.

### II.

The opening paragraph of the opinion of the Supreme Court of Missouri, En Banc, reported as State v. Yowell, (Mo. Sup.Ct. en Banc, 1974) 513 S.W.2d 397, 399 stated:

> Defendant, Ray Alvin Yowell was charged with the offense of forcible rape. See Section 559.260. He was also charged with a prior felony conviction. Section 556.280. The jury found the defendant guilty and the court fixed his punishment at imprisonment for a term of 10 years. The defendant first appealed to this court but we were of the view that jurisdiction was in the Missouri Court of Appeals, Kansas City District, and the case was accordingly transferred to that court. The court of appeals adopted an opinion which reversed the judgment and remanded the case for a new trial. Upon application of respondent we ordered the case transferred to this Court. It will be determined here the same as on original appeal. We affirm.

The Supreme Court of Missouri reliably found that:

> Prior to trial defendant filed a motion to suppress three items taken by

the deputy sheriff from his car, i. e., (1) the back seat cover (2) the strand of hair found under the front seat and (3) the piece of rope found in the trunk. Evidence was heard and the motion overruled. The evidence indicated that the officers had a warrant for defendant's arrest but not a search warrant; that they observed defendant's car on the afternoon of February 25 and saw the blood on the back seat cover; that when defendant was arrested he asked Deputy Sheriff Cox to move his car and did not request a return of the key so it was retained by Cox; that later that night Cox moved the car to the highway patrol grounds; that later that day (the 26th) he searched the car for a gun defendant had told Jackie he had in the car and saw the strand of hair and the rope; that two days later he removed the three items from the car and delivered them to Sergeant Burnett. Cox further testified that the car was kept locked during the time it was impounded [513 S.W.2d 402].[2]

The Supreme Court of Missouri then noted that the petitioner's first point on appeal was that "the trial court erred in overruling the motion to suppress and subsequently admitting the said items in evidence during the trial." The Supreme Court of Missouri, however, refused to reach the federal question presented for the following stated reason:

> We have concluded that we need not determine the validity of the search in question because the alleged error in

---

Frazier v. Roberts, 441 F.2d 1224, 1229–1230 (CA8 1971). [459 F.2d 1065–1066].

The rule stated by the Supreme Court of Missouri in Fields v. State has since been adopted by the Supreme Court of Missouri, En Banc. See Schleicher v. State, (Mo. Sup.Ct., En Banc, 1972) 483 S.W.2d 393, 394, Judge Seiler dissenting on the ground that "The basic question is, who is going to hear federal constitutional search and seizure questions arising from Missouri state convictions? Our divisional position is that it is to be done by the federal courts, Fields v. State (Mo.Sup.) 468 S.W.2d 31. This leads to conflicts and does not promote finality. If there is a defect in our state pro-

ceedings, it seems to me we should handle it, rather than turning it over to the federal courts." [483 S.W.2d at 395].

2. The factual circumstances summarized in the above quotation are reliably found and are accepted by this Court. For a more full statement of the same undisputed factual situation we attach as Appendix A the factual statement made by the Missouri Court of Appeals, Kansas City District; and, as Appendix B, the summation of the testimony of Sheriff Nulin, Deputy Sheriff Cox, Sergeant Burnett and Michael J. Brezzandine, as made by the Supreme Court of Missouri in its opinion.

admitting the said items in evidence has not been preserved for review. . . . Defendant raised the point of unreasonable search and seizure in his motion to suppress and complained of the ruling in his motion for new trial but failed to object to any of the items when they were offered at the trial. [Id.][3]

▉▉▉ The fact that the Missouri Court of Appeals, Kansas City District, rejected respondent's procedural argument and the fact that the Supreme Court of Missouri accepted that argument does not affect this Court's duty to consider the federal question presented. For "the question of when and how defaults in compliance with state procedural rules can preclude our consideration of a federal question is itself a federal question." Henry v. Mississippi, 379 U. S. 443, 447, 85 S.Ct. 564, 567, 13 L.Ed.2d 408 (1965). Consistent with principles stated in that case, by issuance of a separate order, we have ascertained that the respondent has no evidence which it wishes to adduce in any effort to support a finding that the petitioner "after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures . . ." Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837.[4] On the basis of the State court record, we accordingly find and conclude that petitioner has not waived his right to have the federal question considered on the merits.

We must therefore consider the merits of petitioner's federal claim. Cf. Smith v. Wolff, (8th Cir. 1974), 506 F.2d 556, and cases cited therein. In light of the apparent reluctance of the Supreme Court of Missouri to permit state appellate review of federal search and seizure claims either on direct appeal or on postconviction motion, we believe that it is appropriate that attention be directed to

3. To support its apparently new procedural rule that a defendant must thrice present a federal search and seizure question to the trial court in order to preserve the question for State appellate consideration, the Supreme Court of Missouri quoted a portion of its earlier opinion in State v. Fields, (Mo. Sup.Ct. Div. 2 1969) 442 S.W.2d 30. However, the portion of the opinion in *Fields* which stated that "the procedural rules of this state, with an exception not here material, require that the contention of an unlawful search and seizure be made by motion to suppress the evidence in advance of trial," [442 S.W.2d at 33] and the portion of that opinion which concluded that principles stated in Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965) were controlling in Missouri, were not quoted by the Supreme Court of Missouri in its opinion affirming petitioner's conviction and apparently no longer reflect the law of Missouri.

4. We entered a specific order on January 3, 1975 in which we invited respondent to state whether he had any evidence to support a by-pass finding. The respondent has stated that he has none. The notion expressed by the Supreme Court of Missouri in its opinion affirming petitioner's conviction that "it is entirely possible that after hearing the evidence on motion to suppress the defendant's attorney may become convinced that his motion was without merit" [513 S.W.2d at 403] finds no factual support under the circumstances of this case. On the question of whether there had been a knowing and intentional waiver, petitioner's counsel advised the Supreme Court of Missouri in appellant's Supplemental Brief that:

So far as this inquiry and point have application to the instant case, (this appeal), this writer, having first duly sworn himself, does hereby unequivocally state, affirm and swear, that in failing to make further objection at the time the evidence in question was offered and admitted, he (this writer) hadn't the foggiest notion that he might by such failure be waiving or forfeiting the defendant's constitutional right and claim to review on the issue of illegal search and seizure. We believed that having filed our pre-trial motion to suppress, and having been heard exhaustively and at length on the same before trial, and the Court having fully heard and ruled the same adversely to defendant, that the point was nevertheless preserved, if necessary, for review. [Appellant's Supplementary Brief in the Supreme Court of Missouri, En Banc, No. 58475, p. 11]

the following from Henry v. Mississippi:

> The Court is not blind to the fact that the federal habeas corpus jurisdiction has been a source of irritation between the federal and state judiciaries. It has been suggested that this friction might be ameliorated if the States would look upon our decisions in Fay v. Noia, *supra,* and Townsend v. Sain, *supra,* [372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770] as affording them an opportunity to provide state procedures, direct or collateral, for a full airing of federal claims. [379 U.S. at 453, 85 S.Ct. at 570].

### III.

■ The excellent opinion of the Missouri Court of Appeals, Kansas City District, makes disposition of the merits of this case an easy task. That opinion properly concluded that "we believe there was an illegal search and seizure here, under the authority of In re J. R. M., 487 S.W.2d 502 (Mo.Banc 1972) and Coolidge v. New Hampshire (1971) 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564."[5] It was further concluded that Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) was "clearly distinguishable" (p. 8 of opinion). That opinion noted that Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), had been handed down after argument in the Missouri Court of Appeals, Kansas City District, but, for reasons properly stated in detail, that:

> .  .  .  .  *Dombrowski* is distinguishable. In the instant case there was no evidence or claim that the search was for custodial or caretaker purposes. Furthermore, there was not shown any necessity for the sheriff to take custody of the car. *Dombrowski* did not overrule Coolidge v. New Hampshire, cited *supra,* and

*Coolidge* and In re J. R. M., cited *supra,* are still deemed controlling in the instant case. [Id, p. 11]

The Missouri Court of Appeals, Kansas City District, reliably found that "the State has not made the contention that the defendant consented to the search and seizure." It properly concluded in the alternative that "However, it is clear in any event, that the defendant did not give such consent as constitutionally required. See State v. Witherspoon, 460 S.W.2d 281, 287 (Mo. 1970)."

■ We further find and conclude that the Missouri Court of Appeals, Kansas City District, reliably found the facts and properly applied controlling federal law in rejecting respondent's harmless error argument. We adopt the following conclusion from the Missouri Court of Appeals, Kansas City District's opinion as our own:

> We believe the introduction into evidence of the blood stains on the seat cover, and the testimony concerning the exhibit was prejudicial. Under defendant's version of the happenings, J was never in defendant's car after she cut her thumb and bled. The evidence as to the blood stains was substantial, lending support to the State's theory that J was in the car after the injury.

The Missouri Court of Appeals, Kansas City District, did not have the benefit of the latest Supreme Court of the United States car search case, Cardwell v. Lewis, (1974), 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325. That case was decided before the Supreme Court of Missouri handed down its opinion but was not considered by the Court in light of its refusal to reach the merits of the federal question presented.

While Cardwell v. Lewis reversed the granting of a state prisoner habeas petition, the plurality opinion of Mr. Justice

---

5. In re J. R. M., (Mo.Sup.Ct. En Banc 1972) 487 S.W.2d 502, is an excellent opinion of the Supreme Court of Missouri in which that court stated and properly applied many of the leading Supreme Court of the United States Fourth Amendment cases, including Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

Blackmun makes clear that the Missouri Court of Appeals, Kansas City District, properly rejected the respondent's contentions that the warrantless search involved in this case could somehow be justified under the various theories advanced by respondent before both the State appellate courts and before this Court.

The Supreme Court of Missouri accurately summarized those theories in its opinion by stating that "the State contends that the car was an instrumentality of the crime and that it and its contents were lawfully seized; also that the seat cover and perhaps the strand of hair were properly seized under the 'plain view' doctrine." [513 S.W.2d at 402]

Mr. Justice Blackmun made clear that the plurality of the Court considered that the question presented in that case was one of first impression and emphasized that the very narrow issue presented was "whether the examination of an automobile's exterior upon probable cause invades a right to privacy which the interposition of a warrant requirement is meant to protect." The plurality opinion emphasized that "In the present case, nothing from the interior of the car and no personal effects, which the Fourth Amendment traditionally has been deemed to protect, were searched or seized and introduced in evidence." In the footnote following that sentence the Supreme Court of the United States rejected the "plain view" and "instrumentality of the crime" argument made in that case by stating:

Petitioner contends that Lewis' car keys and the parking lot claim check were seized in plain view as an incident to his arrest, and that this seizure served to transfer constructive possession of the vehicle which could then be searched and seized as an instrumentality of the crime. We feel that the District Court and the Court of Appeals were correct in rejecting this argument. Irrespective of the plain view or instrumentality analy-ses, the concept of constructive possession has not been found to justify the search or seizure of an item not in actual possession.

The very narrow holding of Cardwell exterior of a car is not unreasonable unv. Lewis was that "where probable cause exists, a warrantless examination of the der the Fourth and Fourteenth Amendments." Again, the footnote to that conclusion made clear that the plurality was not to be read more broadly. That footnote stated:

Again, we are not confronted with any issue as to the propriety of a search of a car's interior. "Neither *Carroll, supra,* [Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543] nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords." Chambers v. Maroney, 399 U.S., at 50, 90 S.Ct. 1975.

Coolidge v. New Hampshire was distinguished on the facts; that case was neither questioned nor overruled. It is also important to note that Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), the leading case in which the controlling principles in regard to what searches and seizures may be justified as an incident to a lawful arrest, was cited and applied with approval by both the plurality and dissenting opinions. The plurality opinion stated in footnote 7 that:

As has been noted, the arrest was made at the Office of the Division of Criminal Activities; but the examination of the vehicle took place some time later at the police impoundment lot. This difference in time and place eliminates any search-incident-to-an-arrest contention.

"The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault

an officer or effect an escape, as well as by the need to prevent the destruction of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L. Ed.2d 777 (1964).

The dissenting opinion stated in its footnote 4 that:

The plurality opinion correctly rejects, *ante*, at 2470, n. 7, the petitioner's contention that the seizure here was incident to the arrest of the respondent. "Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L. Ed.2d 777.

It is therefore apparent that although Cardwell v. Lewis is distinguishable on its facts, the plurality's opinion's discussion and rejection of the similar justification arguments made by respondent in this case confirms our finding and conclusion that the Missouri Court of Appeals, Kansas City District, properly applied controlling federal law. Accordingly, petitioner is entitled to the relief prayed for in his petition for federal habeas corpus.

For the reasons stated, it is

Ordered (1) that petitioner is entitled to the relief prayed for but that the writ shall not issue for a period of thirty (30) days in order to afford the State of Missouri, through its Attorney General, the opportunity to have petitioner's conviction set aside or declared to be invalid, and to begin new trial proceedings; it is further

Ordered (2) that if no such trial proceedings are begun within thirty (30) days from the date of this order, the writ shall issue; it is further

Ordered (3) that if such trial proceedings are begun within thirty (30) days from the date of this order, this Court will delay the issuance of the writ until such time as the situation calls for further disposition of this case; it is further

Ordered (4) that the Attorney General keep this Court advised of all proceedings that may be taken consistent with our stay of the issuance of the writ.

## APPENDIX A

### Missouri Court of Appeals, Kansas City District

Defendant first contends that the trial court erred in overruling defendant's pretrial motion to suppress evidence and in admitting the evidence, in violation of defendant's rights under the Fourth and Fourteenth amendments to the U. S. Constitution and Sec. 15, Article 1 of the Missouri Constitution, V.A.M.S. The evidence, of which particular complaint was made, was a seat cover, containing blood stains, from the back seat of defendant's car; strands of hair from the floor in the back of the car; and a rope found in the trunk of the car.

There was technical evidence as to the blood stain being human blood, type A. J testified that her blood type was A positive. A technician testified that the strands of hair were similar in characteristics of hair specimens that had been taken from D's head.

Testimony of Kenneth Cox, deputy sheriff, was given at the hearing on the pretrial motion to suppress. According to his testimony, in the early afternoon of February 25, 1971, at the prosecutor's office he and Claude Huhn, Sheriff, heard the girls' version as to what happened. They described the boys and the car, and it was related that J's thumb

bled profusely while she was in the back seat of the car (of defendant) and that gobs of D's hair were pulled out when she was pulled by her hair from the front to the back seat of the car.

From the girls' descriptions the Sheriff suspected defendant and Elam and recognized the car described as one probably belonging to defendant. Cox and Nuhn, carrying warrants for arrest of defendant and Elam, left Macon at 2:00 p. m., looking for the boys. They went to Jack Munn's Sale Barn in New Cambria where they knew defendant was employed. There they saw defendant's car, which the Sheriff was familiar with, and which met the description the girls had given. They looked in through the glass of the car and saw some blood on the seat in back and extending down the front of the seat, but they did not open the door or make any search. They learned that defendant was gone to a horse sale so they went on. They arrested Elam and took him to the county jail, and came back for defendant. At about 11:00 p. m. (on February 25) they found him where he was living (with his mother), at the Apco Service Station in New Cambria. They read to defendant the warrant for his arrest and "read him his rights." When they came out of the house defendant gave Cox, deputy sheriff, his car keys and asked him to move his car, which was blocking the drive. Cox drove the car around to the side of the house, locked it, and kept the keys. Defendant never did ask for the return of the keys nor did Cox ask if he could keep the keys. It was dark at this time, and Cox saw nothing of significance in the car when he drove it to the side of the house.

Defendant was taken to the jail and then Cox and Nuhn came back to the home of a friend of Elam to pick up some clothes of Elam. Then about 12:25 a. m. on February 26 Cox got into defendant's car at the service station (with the keys he still had) and drove it to the State Highway Patrol building where Cox parked and locked it, and he had the car keys and clothes of Elam locked up in the evidence room of the State Highway Patrol. In his testimony Cox made the reference that the car was "impounded." Later in the day, on February 26, Cox came back to defendant's car at the State Highway Patrol. In the meantime he had learned more about what was supposed to have taken place, and he was looking for a weapon because there was something said during the occurrence about "we have a gun." He opened the car, looked in the glove compartment, and noted that the car "had been swept clean." He had heard the girls had done lots of smoking in the car but found only one cigarette butt.

Cox, on inspection, noticed a long strand of blond hair under the back seat and a king-size 7-Up bottle under the front seat. In the trunk he saw a saddle and a lariat of horsehair. He took nothing out of the car at that time, and relocked the car. On March 2nd he came back to the car with a sergeant of the State Highway Patrol, and under the sergeant's supervision Cox removed from the car and gave to the sergeant for safekeeping the back seat cover, the strand of hair, the 7-Up bottle and the rope. No warrant was ever obtained for a search or seizure.

## APPENDIX B

### Supreme Court of Missouri

Claude Nuhn, Sheriff of Macon County, testified that from the interview with the two girls he was able to determine the identity of the two men; that he took the girls to the prosecuting attorney's office and then obtained a warrant for the arrest of defendant and Elam; that he and his deputy saw the defendant's car at a sale-barn where he was employed but that defendant was not there; that they observed that there was blood on the back seat cover of de-

fendant's car; that they later arrested Elam at a Macon theater; that defendant was arrested at about 11:30 p. m. at a filling station in New Cambria where he lived.

Deputy Sheriff Kenneth Cox testified that he was with the sheriff at the time they observed the defendant's car at the sale-barn; that it had an area on the plastic rear seat cover where blood had trickled down the front of the seat; that later that night they observed defendant's car at a filling station in New Cambria and arrested the defendant there; that as they were about to leave, defendant gave him the car keys and asked him to move the car around to the side of the building which he did; that he retained the keys after locking the car; that later that night he went back and picked up the car and drove it to the highway patrol station near Macon where it was parked and again locked; that later that day he went back and searched the car; that he found strands of hair under the front seat and a horse-hair type woven rope in the trunk; that he later took the seat cover from the rear seat and delivered it to Sergeant Burnett of the highway patrol.

Sergeant Burnett, an evidence technician and investigator for the highway patrol, testified concerning photographs which he took of the two girls. He further testified that he took the seat cover and put it in a bag and delivered it to the laboratory in Jefferson City.

Michael J. Brezzandine, a laboratory technician for the highway patrol in Jefferson City, testified that he tested the blood from the seat cover and it was type A. He further testified that he examined two samples of human hair delivered to him (that which had been found in the car and a piece cut from Darla's head); that from the number of scales and the size and shape he concluded that they had similar characteristics.