STATE of Missouri, Respondent,

v.

Reginald DARRIS, Appellant.

No. 39639.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 28, 1979.

Robert C. Babione, Public Defender, Michael P. David, Asst. Public Defender, Richard A. Fredman, Sp. Asst. Public Defender, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Marjorie Wholey Haines, Paul Robert Otto, Assistant Attys. Gen., Jefferson City, for respondent.

STEPHAN, Presiding Judge.

Defendant Reginald Darris was found guilty by jury of burglary in the first degree, § 560.040, RSMo 1969, and sentenced by the trial court to fifteen years' imprisonment under the Second Offender Act. Section 556.280, RSMo 1969. On this appeal, he contends the trial court erred in three respects: (1) in denying his pretrial motion to suppress testimony concerning a statement made by him before he was advised of his right to remain silent; (2) in refusing to allow defense counsel to reopen cross-examination of one of the state's witnesses; and (3) in failing to grant his motion for a directed verdict at the close of all evidence because the state failed to prove that he entered the dwelling with the intent to steal or commit a felony. Having examined the transcripts and briefs, we find the points to be without merit and affirm.

Turning first to defendant's attack on the sufficiency of the evidence, we set it forth in the light most favorable to the verdict. *State v. Green*, 575 S.W.2d 211, 212 (Mo. App.1978); *State v. Nichelson*, 546 S.W.2d 539, 542 (Mo.App.1977).

On February 23, 1977, at approximately 2:00 in the afternoon Mrs. Dorothy Williams was in her home at 4225 Red Bud in the City of St. Louis with her four-year-old grandson. Mrs. Williams had in her home personal property of value, including a color television set, stereophonic equipment, portable radios and jewelry. She heard a knock at her front door and, after a short delay, answered it. She found no one there. While at the front door, she heard a loud noise at the back of her home and proceeded to investigate. Upon reaching a hallway toward the back of the house, Mrs. Williams encountered the defendant, who was already inside the house. She asked him what he was doing and he said he had come to collect $500 that her son owed him. Mrs. Williams, denying that such could be the case, turned around and went out the front door. She knocked on the door of the upstairs flat but no one responded. Defend-ant followed her out the front door and ran south on Red Bud after telling her not to call the police. Mrs. Williams then went back inside, discovered that her back door had been kicked in, and called the police.

St. Louis Police Detectives Edgar Holloway and Richard Jones were patrolling the area in an unmarked car when they heard a radio dispatch concerning prowlers at 4225 Red Bud. The dispatch described the suspect as wearing blue jean pants and a blue jean shirt. Upon nearing the address, the officers observed the defendant walking on the sidewalk approximately three hundred feet from the house. Since he matched the description they had, he was stopped, put in the squad car and driven back to 4225 Red Bud. The police officers testified that when they first talked to appellant they told him that they wanted him to accompany them on a call and if he was not involved he would be released.

After the short trip to the Williams home, Jones went to the door and summoned Mrs. Williams. Holloway remained in the vehicle with defendant. As Mrs. Williams and Detective Jones walked toward the car, Mrs. Williams pointed at defendant and said, "That's him." At this point, defendant "blurted out" a statement to the effect that he had entered the house to collect $1,400 that Mrs. Williams' son owed him. Holloway then informed defendant he was under arrest and advised him of his *Miranda* rights. Up to that point, the officers had asked no questions of defendant except his name. Defendant repeated his admission several times after the *Miranda* warning, on the way to and at the police station. Testifying in his own defense, defendant admitted gaining entrance to the home by kicking in the back door but insisted that he had no intention of stealing anything, that he was looking for Jerome Johnson to collect $500 he had lent to Johnson. It was made to appear that Johnson lived with his mother at 4252 Red Bud. Defendant claimed to have gone to the 4225 address as a mistake.[1] The jury was, of

---

1. Defendant also testified that he was acquainted with Mrs. Johnson but tendered no explanation for mistaking her for Mrs. Williams.

course, free to disbelieve the defendant's exculpatory evidence. *State v. Brunson*, 516 S.W.2d 799, 804[9] (Mo.App.1974). The evidence was sufficient for the jury to find that defendant forcibly entered Mrs. Williams' home with the intent to steal. *State v. Powell*, 357 S.W.2d 914, 917 (Mo.1962); *State v. Carson*, 501 S.W.2d 503, 506[1–2] (Mo.App.1973). Her presence provided the element necessary for the crime to be burglary in the first degree. Section 560.040, RSMo 1969; *State v. Murphy*, 508 S.W.2d 269, 275 (Mo.App.1974).

■ With respect to defendant's contention that the trial court erred in failing to suppress testimony concerning his statement at the time Mrs. Williams identified him, we note that no objection was made at the trial when the officers testified that defendant stated he had entered the premises, albeit for the purpose of collecting a debt. No objection having been made at the trial, defendant failed to preserve the point. *State v. Hulsey*, 557 S.W.2d 715, 718–719 (Mo.App.1977); *State v. Yowell*, 513 S.W.2d 397, 402–403 (Mo. banc 1974); *State v. Bryson*, 506 S.W.2d 358, 361 (Mo. 1974). As pointed out in *Yowell* and *Bryson*, a defendant may not stand mute while arguably objectionable evidence is put in the record, take his chances with the jury, and then complain on appeal. This principle is underscored by the situation presented in the instant case: the testimony of the police officers as to what defendant said at the time of his arrest corroborated, in part, the defendant's own testimony that he entered the Williams home by mistake, seeking to collect a debt, not to steal. Defendant may not have the benefit of the officers' testimony to bolster his theory of defense at trial and then, having received an unfavorable verdict, use it to seek reversal of his conviction.

■ We have, nonetheless, considered the point under Rule 27.20(c) to determine whether the admission of the statement in evidence was plain error affecting substantial rights of the defendant. We hold it was not.

■ Appellant contends that his statement to the effect that the victim's son owed him money was inadmissible under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), because it was made before he had been advised of his right to remain silent. We believe neither the letter nor the spirit of *Miranda* supports such a view.

■ Under *Miranda*, an accused must be advised of certain federal constitutional rights before being subjected to "custodial interrogation" which was defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, supra, 444, 86 S.Ct. 1612. Thus, in order for the rule of *Miranda* to obtain, there must be both custody and questioning:

> "To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way *and* is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, . . ." *Miranda*, supra, 478–479, 86 S.Ct. 1630 (emphasis added).

In the instant case, defendant had not been subjected to interrogation relating to the crime under investigation. When Mrs. Williams indicated by words or gesture that he was the man encountered in her home, he "blurted out" his statement. In *Miranda*, the majority opinion was careful to point out, "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Id.*, 478, 86 S.Ct. 1630. Defendant's spontaneous utterance provoked by nothing more than Mrs. Williams' indication of recognition was admissible against him.

■ Furthermore, even if error could conceivably be found in the admission of testimony concerning defendant's statement, it was rendered totally harmless by the fact that he took the stand and testified

on the same subject in even greater detail. *State v. Crow*, 486 S.W.2d 248, 251–252[2] (Mo.1972); *State v. Hams*, 515 S.W.2d 789, 791 (Mo.App.1974).

In the remaining assignment of error, defendant contends that the trial court erred in refusing to permit defense counsel to reopen cross-examination of Detective Holloway. During the initial cross-examination, Holloway testified that when they arrived at the Williams house, Detective Jones "went in to investigate the prowler call and he brought her out." Defense counsel challenged Holloway, "I want to be fair to you, and I don't have it typed up, but that's not what you told me yesterday [during the hearing on the motion to suppress]. Is it?" A. "I don't recall; but that's exactly what happened." Q. "So you didn't testify yesterday that when you pulled up she was either coming out of her door or on the porch somewhere?" There then ensued a colloquy between court and counsel about having the court reporter type "that" up during a recess. The court agreed that "it's going to be typed up and it will be gone into." Holloway was recalled later during the course of the trial, and defense counsel stated "Officer, I had you recalled to the stand in order to apologize to you." He then explained that he had examined the transcript of "yesterday's proceedings" and it was substantially the same as the testimony defense counsel had earlier disputed. Defense counsel then sought and was granted permission to approach the bench. Defense counsel then made it known to the court for the first time that, in counsel's opinion, another discrepancy existed between Holloway's pretrial and trial testimony as to whether the defendant made his incriminating statement while he was in the police vehicle or after he had been taken out of it to give Mrs. Williams a "second look." The trial court refused to

permit defense counsel to explore this claimed discrepancy, and we find no error in the ruling.

 Defendant argues that the question "whether the defendant was in or out of the car when the statement was allegedly made is an important one." The significance attached by defendant to this matter is that, if the statement was made outside the car, there would have been a "substantial likelihood" that Mrs. Williams would have heard it. Because she did not hear it, argues defendant, it could be inferred that the statement was never made. Taking the argument another, tenuous step forward, defendant argues that this would have detracted from Holloway's credibility. We are not persuaded by such arguments. In view of Mrs. Williams' testimony as to the explanation defendant made to her for being in the house, Detective Jones' testimony as to the statement at the time of defendant's identification by Mrs. Williams, and defendant's own testimony at trial, it cannot be said that the state's case depended in any significant manner on Holloway's credibility.[2] A trial court has a large measure of discretion in limiting cross-examination; exercise of that discretion is not to be disturbed on appeal, absent a clear showing of abuse. *State v. Johnson*, 486 S.W.2d 491, 496 (Mo.1972); *State v. Richards*, 536 S.W.2d 779, 788 (Mo.App.1976); *State v. Smith*, 534 S.W.2d 604, 610 (Mo.App.1976). Here, there was no abuse of discretion in limiting the cross-examination of Detective Holloway to the matter for which he had been recalled and refusing to permit inquiry into an extraneous matter of dubious materiality.

The judgment is affirmed.

KELLY and STEWART, JJ., concur.

---

2. The case on which defendant relies principally in this part of his brief, *State v. Thompson*, 280 S.W.2d 838 (Mo.1955), is not apposite. In that case, the trial court refused to permit defense counsel to inquire of several witnesses who identified defendant at trial whether they had testified at the preliminary hearing that they could not identify him. The rulings were apparently made on the theory that what they testified to at the preliminary hearing was "immaterial." The principal defense being alibi, the court said that the issue of "identification of the defendant as the person who committed the offense charged was the most important issue in the case, . . ." *Id.*, 841.